1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   CEMCO, LLC,                              CASE NO. C23-0918JLR

11                          Plaintiff,        ORDER

12              v.                            ~~PROVISIONALLY FILED~~
                                              ~~UNDER SEAL~~
13   KPSI INNOVATIONS, INC., et al.,

14                          Defendants.

## I.   INTRODUCTION

16        Before the court is Defendants KPSI Innovations, Inc. ("KPSI"), James Klein

17   ("Mr. Klein"), Serina Klein ("Ms. Klein"), and Kevin Klein's (collectively,

18   "Defendants") motion to dismiss Plaintiff CEMCO, LLC's ("CEMCO") amended

19   complaint.  (Mot. (Dkt. # 27); *see also* Reply (Dkt. # 34); Am. Compl. (Dkt. # 16).)

20   CEMCO opposes the motion.  (Resp. (Dkt. # 30).)  At the court's direction, the parties

21   filed supplemental briefs concerning CEMCO's Article III and statutory standing in light

22   of its license agreement with third-party Clarkwestern Dietrich Building Systems LLC

1   ("ClarkDietrich").  (*See* License Agreement (Dkt. # 40) (sealed); Pl.'s Supp. Br. (Dkt.

2   # 43); Defs.' Supp. Br. (Dkt. # 44).)  The court has considered the parties' submissions,

3   the relevant portions of the record, and the governing law.  Being fully advised,[1] the court

4   GRANTS in part and DENIES in part Defendants' motion.

5                            **II.   BACKGROUND**

6          CEMCO owns United States Patent Nos. 7,681,365 (the "'365 Patent"), 7,814,718

7   (the "'718 Patent"), 8,136,314 (the "'314 Patent"), and 8,151,526 (the "'526 Patent")

8   (collectively, the "Asserted Patents").  (Am. Compl. ¶ 10.)  The Asserted Patents

9   "generally claim head-of-wall products that comprise an intumescent strip . . . affixed on

10  a sidewall of a header, wherein the intumescent strip expands in a fire to seal the gap

11  between the header and the ceiling to inhibit the spread of smoke and fire."  (*Id.* ¶ 11);

12  *see also* '365 Patent at 6:42-8:29; '718 Patent at 10:9-12:22; '314 Patent at 10:20-65;

13  '526 Patent at 7:32-8:46.

14         Mr. Klein is the sole named inventor on each of the Asserted Patents.  He is also a

15  former CEMCO employee.  (Am. Compl. ¶ 14.)  A series of lawsuits and settlements

16  involving CEMCO and its affiliates, Mr. Klein and his businesses (including BlazeFrame

17  Industries, Ltd. ("BlazeFrame")), and ClarkDietrich resulted in Mr. Klein and his

18  companies "g[iving] up the right to make, use, offer for sale, or sell any product covered

19  by the [Asserted] Patents" and "ClarkDietrich bec[oming] the exclusive licensee of the

20  //

21         _____
    [1] The parties request oral argument.  (*See* Mot. at 1; Resp. at 1.)  The court, however,
22  concludes that oral argument would not be helpful to its disposition of the motion.  *See* Local
    Rules W.D. Wash. LCR 7(b)(4).

1  [Asserted] Patents." (*Id.* ¶ 20; *see also id.* ¶¶ 14-40 (describing four prior lawsuits).)  The

2  court expands on the parties' thorny history below.

3        In 2012, CEMCO sued ClarkDietrich, Mr. Klein, and BlazeFrame, alleging that

4  Mr. Klein breached his employment contract with CEMCO by keeping the Asserted

5  Patents and assigning them to BlazeFrame.  (*Id.* ¶¶ 16-17.)  *See generally Cal. Expanded*

6  *Metal Prods. Co.*[2] *v. Clarkwestern Dietrich Bldg. Sys. LLC*, No.

7  2:12-cv-10791-DDP-MRW (C.D. Cal.).  The parties to that lawsuit settled on October 2,

8  2015.  (Am. Compl. ¶ 18.)  Pursuant to that settlement, BlazeFrame assigned the Asserted

9  Patents to CEMCO and received "a royalty-free non-exclusive license . . . to sell products

10  covered by the [Asserted] Patents in a restricted [six-state] territory."  (*Id.*)  CEMCO, in

11  turn, "granted ClarkDietrich a license to the [Asserted] Patents that was non-exclusive in

12  the restricted territory and exclusive in the rest of the United States, in consideration for

13  which ClarkDietrich paid CEMCO a certain royalty for the sale of the licensed products."

14  (*Id.*; *see also* License Agreement § 2.)

15        In 2016, less than a year after the parties settled the first case, CEMCO filed a

16  second lawsuit alleging that BlazeFrame had violated the settlement agreement by

17  "selling the licensed products outside of its restricted territory."  (Am. Compl. ¶ 19.)  *See*

18  *generally Cal Expanded Metal Prods. Co. v. Klein*, No. 2:16-cv-05968-DDP-MRW (C.D.

19  Cal. Aug. 10, 2016).  The parties settled that case on June 25, 2017.  (Am. Compl. ¶ 20.)

20  Under the terms of that agreement, BlazeFrame "gave up the right to make, use, offer for

21

22      [2] CEMCO is also known as "California Expanded Metal Products Co."  (*See, e.g.*, Am. Compl. ¶ 17.)

1   sale, or sell any product covered by the [Asserted] Patents," and "ClarkDietrich became

2   the exclusive licensee of the [Asserted] Patents" in all fifty states.  (*Id.*)  Two days later,

3   Mr. Klein created Safti-Seal, Inc. ("Safti-Seal"), which sold "modified . . . BlazeFrame

4   products."  (*Id.* ¶¶ 21, 22.)

5          In 2018, CEMCO and ClarkDietrich sued Mr. Klein, BlazeFrame, and Safti-Seal

6   in this court "for infringement of the [Asserted] Patents based on the Safti-Seal products."

7   (*Id.* ¶ 23.)  *See generally Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR

8   (W.D. Wash.).  The parties settled for the third time in December 2019, and Mr. Klein

9   "and his co-defendant companies stipulated to a consent judgment that the Safti-Seal

10  products infringed the [Asserted] Patents."  (Am. Compl. ¶ 24.)  In January 2020, this

11  court entered a permanent injunction barring Mr. Klein, BlazeFrame, and Safti-Seal from

12  infringing the Asserted Patents.  (*Id.* ¶ 25.)  Mr. Klein then formed Seal4Safti, Inc.

13  ("S4S"), which "stepped into Safti-Seal's shoes by doing business as Safti-Seal."  (*Id.*

14  ¶¶ 26, 29.)  In October 2020, the court reopened the 2018 lawsuit to initiate contempt

15  proceedings against Mr. Klein and his companies.  (*Id.* ¶ 32.)  In February 2022, the court

16  held "Mr. Klein and S4S in contempt for violating the . . . permanent injunction."  Order

17  at 54, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D. Wash. Feb. 16,

18  2022), Dkt. # 301.

19         On November 13, 2020—during the contempt proceedings in this court—S4S

20  filed a declaratory action in the Central District of California, "seeking a declaratory

21  judgment of noninfringement, unenforceability, and invalidity as to the [Asserted]

22  Patents."  (Am. Compl. ¶ 37.)  In May 2022, a jury returned a verdict in favor of

1  CEMCO, finding the Asserted Patents were not invalid and that S4S willfully infringed at

2  least one claim of each of the Asserted Patents.  (*Id.* ¶ 38); *see also* Verdict Form at 4-5,

3  *Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.*, No. 2:20-cv-10409-MCS-JEM (C.D.

4  Cal. May 10, 2022), Dkt. # 213.

5       The present fifth lawsuit involves CEMCO, KPSI, and three members of the Klein

6  family.  KPSI "was formed to buy certain assets from [Mr. Klein's] former business

7  colleagues . . . so that those assets could be put to profitable use." (Mot. at 1.)  Mr. Klein

8  is "an employee of KPSI" and "supervis[es] the manufacture of KPSI products."  (Ms.

9  Klein Decl. (Dkt. # 27-1) ¶ 4.)  Ms. Klein, Mr. Klein's wife, is KPSI's "sole

10 shareholder." (*Id.* ¶ 2.)  Their son, Kevin Klein, is also "an employee of KPSI" whose

11 "duties include the manufacture of KPSI products." (*Id.* ¶ 5.)

12      CEMCO argues that Mr. Klein "continues to infringe" the Asserted Patents "under

13 the guise of KPSI." (Resp. at 1.)  In particular, CEMCO alleges that KPSI acquired

14 S4S's "inventory" and other "assets relating [to] fire-blocking head-of-wall products"

15 "without receiving a reasonably equivalent value in exchange" and sells infringing

16 products to Defendants' customers.  (Am. Compl. ¶¶ 46, 106.)  CEMCO, the sole

17 plaintiff in this case, is asserting claims against Defendants for infringement of the

18 Asserted Patents and the fraudulent transfer of assets.  (*Id.* ¶¶ 63-126.)  CEMCO seeks

19 "$10,000,000 in compensatory damages," "treble damages, [its] costs of suit and

20 reasonable attorneys' fees," as well as an injunction against Defendants prohibiting them

21 "from selling any products that infringe any claim of any of the [Asserted] Patents." (*Id.*

22 at 16.)

1    Defendants assert that "KPSI and the Kleins have a right to do these things" and

2    describe CEMCO's lawsuit as "a continuation of what can fairly be called serial

3    litigation . . .  against James Klein and his related businesses." (Mot. at 1.) Defendants

4    acknowledge that "Mr. Klein is taking his lumps" in light of former court rulings but

5    maintain that he is not prohibited from selling "intumescent strip products, so long as

6    they do not offend the Plaintiff's patents." (*Id.* at 1-2.)

### III.    ANALYSIS

8    Defendants argue that CEMCO's amended complaint must be dismissed for the

9    following reasons:  (1) CEMCO lacks Article III and statutory standing; (2) ClarkDietrich

10   is an indispensable party; (3) CEMCO's allegations of patent infringement and fraud are

11   not plausible; and (4) CEMCO improperly attempts to pierce the corporate veil to assert

12   patent infringement claims against Mr. Klein, Ms. Klein, and Kevin Klein.  (Mot. at

13   2-19.)  For the reasons set forth below, the court concludes that CEMCO has both Article

14   III and statutory standing, that ClarkDietrich is a necessary party to this action, that

15   Defendants are not entitled to dismissal of CEMCO's fraudulent transfer claims, and that

16   it need not address CEMCO's remaining claims for patent infringement in this order.

17   **A.    Standing**

18   "Before a court may exercise jurisdiction over a patent infringement action, it

19   must be satisfied that, 'in addition to Article III standing, the plaintiff also possesse[s]

20   standing as defined by [Section] 281 of the Patent Act.'" *Drone Techs., Inc. v. Parrot

21   S.A.*, 838 F.3d 1283, 1292 (Fed. Cir. 2016) (quoting *Alps S., LLC v. Ohio Willow Wood*

22   //

1  *Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015)).  For the reasons explained below, CEMCO

2  has both statutory and Article III standing to bring this suit.

3            1.      Statutory Standing

4            Defendants move to dismiss this action for lack of statutory standing because

5  CEMCO's exclusive license agreement with ClarkDietrich prevents CEMCO from

6  "fall[ing] within the class of plaintiffs whom Congress has authorized to sue."  (Mot. at

7  7.)  The Patent Act provides that "[a] patentee shall have remedy by civil action for

8  infringement of [its] patent."  35 U.S.C. § 281.  Generally, an assignee or owner, such as

9  CEMCO, "is the patentee and has standing to bring suit for infringement."  *Enzo APA &*

10  *Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *see also Lone Star*

11  *Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019)

12  ("The term patentee includes the original patentee . . . and 'successors in title.'" (quoting

13  35 U.S.C. § 100(d))).  Patent owners who have transferred sufficient rights to render an

14  exclusive licensee the owner of the patents, however, lack standing and are "not

15  permitted to sue for infringement."  *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear*

16  *Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010).

17            To determine whether CEMCO has statutory standing to bring this suit, the court

18  "must ascertain the intention of" CEMCO and ClarkDietrich with respect to the license

19  agreement "and examine the substance of what was granted."  *Id.* at 1359 (quoting

20  *Mentor H/S, Inc. v. Med. Device All., Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001)).  (*See*

21  *generally* License Agreement.)  If the license agreement was "tantamount to an

22  assignment" of the Asserted Patents to ClarkDietrich, *Alfred E. Mann*, 604 F.3d at 1359,

1   then CEMCO would lack standing because, as Defendants argue, it would be "attempting

2   to assert Clark[Dietrich's] right to exclude" (Mot. at 4).

3          A license agreement is "tantamount to an assignment" when it transfers "all

4   substantial rights" in the patents to an exclusive licensee.  *Alfred E. Mann*, 604 F.3d at

5   1359 (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d

6   870, 873-74 (Fed. Cir. 1991)).  In determining whether CEMCO effectively assigned the

7   Asserted Patents to ClarkDietrich, "[t]he first step is to determine whether the license is

8   exclusive or nonexclusive." *Id.* at 1360.  The parties agree that ClarkDietrich has been

9   CEMCO's exclusive licensee since the second lawsuit settlement.  (*See* Am. Compl.

10  ¶ 20; Resp. at 1; Mot. at 4.)  That ClarkDietrich is CEMCO's exclusive licensee,

11  however, is insufficient to establish that CEMCO transferred "all substantial rights" in

12  the Asserted Patents to ClarkDietrich.  *See Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,

13  434 F.3d 1336, 1343 (Fed. Cir. 2006) (holding that the nonparty was "merely an

14  exclusive licensee without all substantial rights").

15         The Federal Circuit "ha[s] never purported to establish a complete list of the rights

16  whose holders must be examined to determine whether a licensor has transferred away

17  sufficient rights to render an exclusive licensee the owner of a patent." *Alfred E. Mann*,

18  604 F.3d at 1360.  Whether the licensor transferred "the exclusive right to make, use and

19  sell products or services . . . is vitally important to an assignment."  *Id.*  "Frequently,

20  though, the nature and scope of the exclusive licensee's purported right to bring suit,

21  together with the nature and scope of any right to sue purportedly retained by the

22  licensor, is the most important consideration."  *Id.* at 1361.  "It does not, however,

1    preclude such a finding if the licensor's right to sue is rendered illusory by the licensee's

2    ability to settle licensor-initiated litigation by granting royalty-free sublicenses to the

3    accused infringers." *Id.* (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed.

4    Cir. 2000)).  The court now evaluates the license agreement.

5    ██████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████    (License Agreement §§ 2, 3(A).)  The license agreement defines

9    "Commercialize" as "to make, have made, manufacture, have manufactured, use, offer

10   for sale, sell, have sold, import, have imported and/or otherwise exploit a product,

11   method or component thereof."  (*Id.* § 1(f).) ██████████████████████

12   ████████████████████████████████████████████████████████████

13   ██████████████    (*Id.* § 3(A).)  Accordingly, CEMCO has transferred its "right to

14   make, use, and sell products" that practice the Asserted Patents, which is a "vitally

15   important" consideration in determining whether CEMCO effectively assigned the

16   Asserted Patents to ClarkDietrich.  *See Alfred E. Mann*, 604 F.3d at 1360.

17        The license agreement's discussion of CEMCO's duty to protect ClarkDietrich's

18   exclusive license, however, precludes a finding that the license agreement was

19   "tantamount to an assignment."  *Id.* at 1359.  The license agreement did not explicitly

20   transfer CEMCO's right to sue to ClarkDietrich, which "shows that [CEMCO] retained

21   the important right to enforce the [Asserted Patents] against accused infringers."  *Univ. of*

22   *S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1322 (Fed.

1  Cir. 2021) (discussing "[t]he agreement's silence on the right to sue accused infringers").

2  The agreement's silence on the right to sue, however, is not the only evidence that

3  CEMCO retained its exclusionary rights in the Asserted Patents. ███████████████

4  ████████████████████████████████████████████████████

5  ████████████████████ (License Agreement § 3(B).)  This "duty . . . to file suit on the

6  patents" could not exist if CEMCO transferred its right to sue to CEMCO.  (*See* Defs.'

7  Supp. Br. at 4.) ████████████████████████████████████████

8  ████████████████████████████████████████████████

9  ██████████████████████████████████ (License

10  Agreement § 3(B).)

11         CEMCO's right to sue is also not "illusory" because the license agreement does

12  not contain any provisions giving ClarkDietrich the right to grant royalty-free

13  sublicenses. *Alfred E. Mann*, 604 F.3d at 1362.  (*See generally* License Agreement.)  The

14  agreement does not mention the right to grant sublicenses at all, and there are no

15  provisions suggesting that ClarkDietrich may circumvent its "obligation to pay royalties

16  to CEMCO" by granting royalty-free sublicenses.  (License Agreement § 2.)  Even if

17  ClarkDietrich could grant sublicenses, CEMCO's right to sue would not be illusory

18  because ClarkDietrich would remain "liable for . . . royalties on the sales." *Speedplay*,

19  211 F.3d at 1251 (citing *Abbott Lab'ys v. Diamedix Corp.*, 47 F.3d 1128, 1129 (Fed. Cir.

20  1995)).

21         Defendants argue that CEMCO's "duty" to protect ClarkDietrich's exclusivity

22  proves that all substantive rights "now belong only to Clark[Dietrich]," but that is not a

1  reasonable interpretation of the license agreement.  (Defs.' Supp. Br. at 2, 4.)  A patent is

2  a "bundle of rights," *Vaupel*, 944 F.2d at 875, and among that bundle are the rights "to

3  bring suit," *Alfred E. Mann*, 604 F.3d at 1361, and "to exclude others," *Intell. Prop. Dev.,*

4  *Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001).  ████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████

7  ████████████████████████████  (License Agreement § 3(B).)  This duty

8  to exclude means CEMCO must have retained the right to sue alleged infringers.

9  Accordingly, CEMCO did not transfer its right to exclude others by filing lawsuits to

10 ClarkDietrich.

11         In sum, CEMCO's "retention of the right to sue in conjunction with all of the other

12 rights" in the Asserted Patents it possesses, including the right to royalties for sales of

13 products practicing the Asserted Patents, is "destructive of the transfer of all substantial

14 rights" to ClarkDietrich.  *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1322

15 (Fed. Cir. 2009).  Accordingly, CEMCO has standing under Title 35 to bring this action

16 against Defendants.

17         2.     Article III Standing

18         Defendants also move to dismiss this matter for lack of Article III standing.  (Mot.

19 at 2-3.)  Standing under Article III of the Constitution requires that the plaintiff establish

20 (1) an actual, concrete injury that is (2) fairly traceable to the defendant's conduct and

21 (3) likely to be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S.

22 555, 560-61 (1992).  In a patent infringement suit, "the touchstone of constitutional

1   standing . . . is whether a party can establish that it has an exclusionary right in a patent

2   that, if violated by another, would cause the party holding the exclusionary right to suffer

3   legal injury." *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010);

4   *see also Fujifilm*, 19 F.4th at 1324 ("[C]onstitutional standing is satisfied when a party

5   holds at least one exclusionary right.").

6          Defendants argue CEMCO lacks Article III standing "in ClarkDietrich's

7   [a]bsence" for three reasons.  (Mot. at 3.)  First, because CEMCO granted ClarkDietrich

8   an exclusive license to the Asserted Patents, CEMCO's allegations "do[] not establish

9   that the Defendants have harmed CEMCO," although they may "have harmed

10  Clark[Dietrich]."  (*Id.* at 4.)  Second, CEMCO's allegations of harm are "too speculative,

11  and far short of 'likely,' to satisfy Article III."  (*Id.* at 5.)  Third, a favorable decision

12  would not redress CEMCO's alleged harms.  (*Id.* at 5-6.)  The court considers these

13  arguments in turn and concludes that Defendants' alleged patent infringement is a

14  concrete, particularized, and redressable harm to CEMCO.

15                  i.    Whether Infringement Harms CEMCO

16         Defendants first argue that, "at the end of the day[,] it would be Clark[Dietrich]

17  that the alleged infringement harms, because it is Clark[Dietrich] who holds what

18  CEMCO concedes is the 'exclusive' right to practice (and the corresponding right to

19  exclude practice of) the patents."  (Mot. at 4.)  That is incorrect.  As noted above,

20  CEMCO retained its exclusionary rights in the Asserted Patents.  *See supra* § III(A)(1).

21  And "those who possess 'exclusionary rights' in a patent suffer an injury when their

22  rights are infringed."  *Lone Star*, 925 F.3d at 1234; *see also Morrow v. Microsoft Corp.*,

1    499 F.3d 1332, 1339 (Fed. Cir. 2007) (noting that the "[c]onstitutional injury" in a patent

2    infringement case arises from the patentee's "right to exclude"); *Lujan*, 504 U.S. at 578

3    ("[I]njury required by Art. III may exist solely by virtue of 'statutes creating legal rights,

4    the invasion of which creates standing.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 500

5    (1975))).  Defendants' alleged infringement of the Asserted Patents therefore poses a

6    harm to CEMCO.

7                        ii.  Speculative Nature of Harm

8            Defendants next argue that "CEMCO's effort to assert Clark[Dietrich's] right to

9    exclude in order to recover based on alleged injuries to Clark[Dietrich] . . . makes

10   CEMCO's injury speculative and not 'likely.'"  (Mot. at 5.)  But "the touchstone of

11   constitutional standing" in this suit is whether CEMCO "can establish that it has an

12   exclusionary right in [the Asserted Patents] that, if violated by [Defendants], would cause

13   [CEMCO] to suffer legal injury."  *Fujifilm*, 19 F.4th at 1323 (quoting *WiAV*, 631 F.3d at

14   1265).  "Constitutional injury in fact occurs when a party performs at least one prohibited

15   action with respect to the patented invention that violates these exclusionary rights."

16   *Morrow*, 499 F.3d at 1339.  Because CEMCO "has the right to exclude others from

17   making, using, and selling" products described in the claims of the Asserted Patents,

18   CEMCO "is constitutionally injured by another entity that makes, uses, or sells"

19   infringing products.  *Intell. Prop. Dev.*, 248 F.3d at 1346; *see also NextEngine Inc. v.*

20   *NextEngine, Inc.*, No. CV 19-00249-AB (MAAx), 2021 WL 926104, at *6 (C.D. Cal.

21   Jan. 15, 2021) (holding infringement of the plaintiff's patents "is a paradigmatic injury in

22   fact" regardless of whether the plaintiff or a third-party is "entitled" to the damages

1   resulting from that injury).  Accordingly, KPSI's alleged past and present infringement of

2   the Asserted Patents is a concrete and particularized injury in fact to CEMCO.

3               iii. Redressability

4          Lastly, Defendants argue "[r]edressability fails" because "enjoining the alleged

5   infringement would not force Clark[Dietrich] to increase production, acquire more

6   customers, or market more products," which would result in increased royalties to

7   CEMCO.  (Mot. at 5.)  That is not the correct standard.  CEMCO's injury is Defendants'

8   alleged infringement, and that injury is redressable through a favorable outcome in this

9   case.  *See Intell. Prop. Dev.*, 348 F.3d at 1347 ("[The plaintiff's] injury is redressable

10  because, if successful in an infringement suit against [the defendant], [the plaintiff] could

11  recover damages . . . and could prohibit [the defendant] from further making, using and

12  selling its allegedly infringing products . . . .").

13         CEMCO therefore has Article III standing to bring this suit.  The court now turns

14  to Defendants' assertion that ClarkDietrich is a necessary party.

15  **B.     Required Joinder Under Rule 19**

16         "Even though the lawsuit was properly brought in the name of the owner of the

17  patent, [the court] must still determine whether the action . . . included all necessary

18  parties."  *Aspex Eyewear*, 434 F.3d at 1344.  Defendants assert that "the [a]mended

19  [c]omplaint's patent allegations . . . must be dismissed for failure to join Clark[Dietrich]

20  as a necessary party under Rule 19."  (Mot. at 8.)  Although Defendants bring their

21  motion pursuant to Rule 12(b)(6), it is Rule 12(b)(7) that provides for dismissal in the

22  //

ORDER - 14

1  case of a "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  The court

2  concludes that ClarkDietrich is a necessary party for the reasons explained below.

3        1.   <u>Rule 12(b)(7) Standard</u>

4        "Failure to join a party that is required under Federal Rule of Civil Procedure 19 is

5  a defense that may result in dismissal under Federal Rule of Civil Procedure 12(b)(7)."

6  *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir.

7  2022).  Courts perform a three-step analysis under Rule 19(b).  The analysis "is a

8  practical, fact-specific one, designed to avoid the harsh results of rigid application."

9  *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150,

10  1154 (9th Cir. 2002).  First, the court "examine[s] whether the absent party must be

11  joined under Rule 19(a)." *Klamath*, 48 F.4th at 943.  If so, the court next "determine[s]

12  whether joinder of that party is feasible." *Id.*  "Finally, if joinder is infeasible, [the court]

13  must 'determine whether, in equity and good conscience, the action should proceed

14  among the existing parties or should be dismissed.'" *Id.* (quoting Fed. R. Civ. P. 19(b)).

15        2.   <u>Necessary Party</u>

16        Necessary parties should be "joined if feasible." *Glacier Gen. Assurance Co. v. G.*

17  *Gordon Symons Co.*, 631 F.2d 131, 134 (9th Cir. 1980); *see also* Fed. R. Civ. P. 19(a)

18  ("Persons Required to Be Joined if Feasible").  A person is necessary to the action if

19  (A) "in that person's absence, the court cannot accord complete relief among existing

20  parties," or (B) "that person claims an interest relating to the subject of the action and is

21  so situated that disposing of the action in the person's absence may" (i) "as a practical

22  matter impair or impede the person's ability to protect the interest," or (ii) "leave an

1    existing party subject to a substantial risk of incurring double, multiple, or otherwise

2    inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(A)-(B).

3         Exclusive licensees are generally "necessary parties" in patent infringement

4    lawsuits.  *Aspex*, 434 F.3d at 1344.  "For the same policy reasons that a patentee must be

5    joined in any lawsuit involving his or her patent, there must be joinder of any exclusive

6    licensee."  *Id.* (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 466

7    (1926) (stating that both the owner and the exclusive licensee are generally necessary

8    parties in an action in equity)); *see also Alfred E. Mann*, 604 F.3d at 1360 ("When there

9    is an exclusive license agreement . . . but the exclusive license does not transfer enough

10    rights to make the licensee the patent owner, either the licensee or the licensor may sue,

11    but both of them generally must be joined as parties to the litigation.").  The court sees no

12    reason to depart from the Federal Circuit's and Supreme Court's guidance on this issue.

13         As an exclusive licensee, ClarkDietrich has "an interest relating to the subject of

14    th[is] action," and its absence may impede its ability to protect that interest.  Fed. R. Civ.

15    P. 19(a)(1)(B)(i).  ClarkDietrich presently has the exclusive right to practice the Asserted

16    Patents, but the Asserted Patents' claims could be invalidated or the Asserted Patents

17    rendered unenforceable as a result of this lawsuit.  *See Luminara Worldwide, LLC v.*

18    *Liown Elecs. Co.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016).  Accordingly, ClarkDietrich's

19    exclusive rights to make and sell products practicing the Asserted Patents are at risk in

20    this lawsuit.  Moreover, in ClarkDietrich's absence, Defendants are at risk of incurring

21    "multiple[] or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii); *see*

22    *also Luminara*, 814 F.3d at 1350 ("[J]oinder protects the alleged infringer from facing

1  multiple lawsuits on the same patent.").  CEMCO does not dispute that ClarkDietrich

2  could file a separate suit.  (*See* Resp. at 9.)  Because CEMCO "retain[ed] the right to

3  sue," Defendants "could face multiple suits for the same alleged infringement—in one

4  suit defending itself against the patentee, and in another defending itself against the

5  exclusive licensee." *See Luminara*, 814 F.3d at 1350.  To prevent this outcome, the

6  Federal Circuit requires joinder under these circumstances.  *See id.*

7           Accordingly, ClarkDietrich is a necessary party.  The court next determines

8  whether joinder of ClarkDietrich is feasible.

9           3.       Feasibility of Joinder

10          "If an absentee is a necessary party under Rule 19(a), the second stage is for the

11  court to determine whether it is feasible to order that the absentee be joined." *E.E.O.C. v.*

12  *Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  Joinder is not feasible in three

13  instances:  (1) "when venue is improper"; (2) "when the absentee is not subject to

14  personal jurisdiction"; and (3) "when joinder would destroy subject matter jurisdiction."

15  *Id.*; *see also* Fed. R. Civ. P. 19(a)(1), (3).

16          Although Defendants argue that ClarkDietrich is "an indispensable party," their

17  joinder analysis is limited to determining whether ClarkDietrich is a "necessary" party

18  under Rule 19(a).  (Mot. at 8-9 (capitalization altered).)  Defendants make no attempt to

19  argue that ClarkDietrich could not feasibly be joined in this action.  (*See generally id.*)

20  Furthermore, the court has reviewed the record and found no facts suggesting that venue

21  is improper or that ClarkDietrich is not subject to this court's personal jurisdiction.  *See*

22  *Sparks-Magdaluyo v. New Penn Fin., LLC*, No. 16-cv-04223-MEJ, 2017 WL 373066, at

ORDER - 17

1 \*6 (N.D. Cal. Jan. 26, 2017) (holding joinder appeared feasible under similar

2 circumstances).  The court also has subject matter jurisdiction over CEMCO's patent

3 infringement claims pursuant to 28 U.S.C. § 1338(a).  It therefore appears that joining

4 ClarkDietrich is feasible.

5       4.   <u>Dismissal</u>

6      When a party is necessary and joinder is feasible, courts may grant plaintiffs leave

7 to amend "to add [the necessary party] as a co-plaintiff." *Sparks-Magdaluyo*, 2017 WL

8 373066, at \*6; *cf. Lone Star*, 925 F.3d at 1227 ("[T]he district court should not have

9 dismissed this case without considering whether . . . the relevant patentee[] should have

10 been joined.").  Because ClarkDietrich is a necessary party, the court GRANTS

11 Defendants' motion to dismiss "the [a]mended [c]omplaint's patent allegations" on this

12 ground.  (Mot. at 8.); *see also* Fed. R. Civ. P. 12(b)(7).  The court, however, also

13 GRANTS CEMCO leave to file an amended complaint adding ClarkDietrich as a

14 co-plaintiff.  If CEMCO does not join ClarkDietrich, Rule 19(c) requires CEMCO to

15 plead the reasons for nonjoinder by stating "(1) the name, if known, of any person who is

16 required to be joined if feasible but is not joined; and (2) the reasons for not joining that

17 person." Fed. R. Civ. P. 19(c).

18 **C.**   **Sufficiency of Allegations**

19      Because the court dismisses CEMCO's claims for patent infringement pursuant to

20 Rule 12(b)(7), the court need not consider in this order Defendants' arguments that

21 CEMCO fails to adequately plead patent infringement claims against KPSI, Mr. Klein,

22 //

1    Ms. Klein, and Kevin Klein.  This leaves only CEMCO's claims alleging the fraudulent

2    transfer of assets.  (Am. Compl. ¶¶ 104-26).

3       1.    Rule 12(b)(6) Standard

4          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint

5    upon the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R.

6    Civ. P. 12(b)(6).  A Rule 12(b)(6) dismissal may "be based on the lack of a cognizable

7    legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

8    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A plaintiff's

9    complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to

10   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

11   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the pleading standard

12   announced by Federal Rule of Civil Procedure 8 does not require "detailed factual

13   allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me

14   accusation."  *Id.* (requiring the plaintiff to "plead[] factual content that allows the court to

15   draw the reasonable inference that the defendant is liable for the misconduct alleged"

16   (citing *Twombly*, 550 U.S. at 556)); *see also* Fed. R. Civ. P. 8(a)(2).

17         When considering a Rule 12(b)(6) motion, the court takes the well-pleaded factual

18   allegations as true and views such allegations in the light most favorable to the plaintiff.

19   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The

20   court need not, however, accept as true a legal conclusion presented as a factual

21   allegation, *Iqbal*, 556 U.S. at 678, nor is the court required to accept as true "allegations

22   that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences,"

1   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In the event

2   dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

3   cannot be saved by any amendment." *Masuda v. Citibank, N.A.*, 38 F. Supp. 3d 1130,

4   1133 (N.D. Cal. 2014) (citing *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005)).

5          2.       Fraudulent Transfer

6          CEMCO's sixth and seventh counts allege violations of RCW 19.40.051 and

7   19.40.041, which govern voidable transfers under the Uniform Voidable Transactions

8   Act. (Am. Compl. ¶¶ 108, 116.) Specifically, CEMCO alleges that S4S transferred its

9   assets to KPSI "without receiving a reasonably equivalent value in exchange for the

10  transfer." (*Id.* ¶¶ 106, 117.) Defendants argue that these claims must be dismissed

11  because KPSI gave S4S reasonably equivalent consideration in the form of "$83,495.99

12  plus a promise to take over the job of pressing Underwriter Laboratories to withdraw

13  portions of certain certifications and listings pursuant to this [c]ourt's order." (Mot. at

14  17; *see also* Ms. Klein Decl. ¶ 10.) CEMCO responds that "KPSI never paid S4S for the

15  assets" and that, regardless, whether "S4S received equivalent value from KPSI is beyond

16  the scope of Rule 8." (Resp. at 14.) CEMCO further asserts that its amended complaint

17  is sufficient because it "alleges that S4S transferred specific assets to KPSI without

18  receiving reasonably equivalent value." (*Id.*) Defendants counter that "courts resolve

19  what constitutes reasonably equivalent value at the motion to dismiss stage all the time."

20  (Reply at 10 (collecting cases).)

21  //

22  //

1    To begin, the court cannot consider "matters outside the pleadings" without

2    treating Defendants' motion to dismiss "as one for summary judgment under Rule 56."

3    Fed. R. Civ. P. 12(d).  The court declines to do so here.[3]

4    Defendants base their argument that CEMCO fails to state a claim upon which

5    relief can be granted solely on their assertion that KPSI did in fact pay $83,495.99 to

6    S4S.  (*See generally* Mot.)  CEMCO alleges, however, that after it "obtained a judgment

7    against S4S in the [f]ourth [l]awsuit," "S4S assigned assets relating [to] fire-blocking

8    head-of-wall products to KPSI, including . . . raw materials[] and inventory," "without

9    receiving a reasonably equivalent value in exchange for the transfer."  (Am. Compl.

10   ¶¶ 46, 105-06.)  CEMCO further alleges that "S4S became insolvent as a result of its

11   transfer of assets to KPSI."  (*Id.* ¶ 107.)  Defendants do not explain why these allegations

12   fail to state a claim, nor do Defendants even mention RCW 19.40.051 and 19.40.041.

13   *See Gremp v. Ramsey*, No. C08-0558RSM, 2009 WL 112674, at *4 (W.D. Wash. Jan. 14,

14   2009) (construing the defendants' silence on RCW 19.40.041 in their motion to dismiss

15   "as an admission that [the p]laintiffs' arguments have merit").  (*See generally* Mot.

16   (lacking any mention of RCW 19.40.051 or 19.40.041).)

17   //

18   
     _____

19   [3] Contrary to Defendants' assertion that "courts resolve what constitutes reasonably
     equivalent value at the motion to dismiss stage all the time" (Reply at 10), none of the cases
     Defendants cite actually support that statement.  *See generally Opperman v. Path, Inc.*, 87. F.

20   Supp. 3d 1018 (N.D. Cal. 2014); *Pearlman v. Alexis*, No. 09-20865-CIV, 2009 WL 3161830
     (S.D. Fla. Sept. 25, 2009); *Jones v. Gardner*, No. 12-998, 2013 WL 12284633 (W.D. Penn. June

21   28, 2013).  In fact, the *Pearlman* court informed the parties that "[o]n a motion to dismiss, the
     court is generally limited to considering the allegations in the operative complaint" and
     concluded that a defense that "requir[ed] proof of facts asserted by the defendant" was

22   "premature at this stage of the litigation."  2009 WL 3161830, at *3.

1    The court therefore DENIES Defendants' motion to dismiss counts six and seven

2    of CEMCO's amended complaint.

3                        IV.    SEALING

4           Because this order relies on and quotes a sealed license agreement, the court

5    DIRECTS the Clerk to provisionally file this order under seal.  The court ORDERS the

6    parties to meet and confer regarding which, if any, portions of this order they seek to

7    redact.  Counsel must then submit one joint statement or, if they cannot agree on a joint

8    statement, competing statements indicating the portions of the order they seek to have

9    redacted and on what basis.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172,

10   1179-80 (9th Cir. 2006).  The statement or statements must attach a proposed redacted

11   order that incorporates the redactions requested in the corresponding statement.  The

12   parties must file any such statement by no later than November 7, 2023.  The court will

13   consider the parties' redaction requests, if any, and then file the order on the docket with

14   any necessary redactions.

15                       V.    CONCLUSION

16          For the foregoing reasons, the court GRANTS in part and DENIES in part

17   Defendants' motion to dismiss (Dkt. # 27).  The court GRANTS CEMCO leave to file an

18   amended complaint adding ClarkDietrich as a co-plaintiff.  CEMCO may file a second

19   amended complaint by no later than **November 13, 2023**.  The parties must file either a

20   joint statement or competing statements concerning redactions to this order as described

21   above no later than **November 7, 2023**.  The court DIRECTS the Clerk to provisionally

22   file this order under seal.

Dated this 31st day of October, 2023.

_____

JAMES L. ROBART
United States District Judge