UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEMCO, LLC, | CASE NO. C23-0918JLR |
| Plaintiff, | ORDER |
| v. | |
| KPSI INNOVATIONS, INC., et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Plaintiff CEMCO, LLC's ("CEMCO") motion for sanctions.
(Mot. (Dkt. # 104); Reply (Dkt. # 109).)  Defendants KPSI Innovations, Inc. ("KPSI"),
Serina Klein ("Ms. Klein"), James A. Klein ("Mr. Klein"), and Kevin Klein (collectively,
"Defendants") oppose the motion.  (Resp. (Dkt. # 107).)  The court has considered the

//

//

//

1    parties' submissions, the relevant portions of the record, and the applicable law.  Being

2    fully advised,[1] the court GRANTS in part and DENIES in part CEMCO's motion.

3                              **II.    BACKGROUND**

4           This case is the latest installment of a patent infringement battle between CEMCO

5    and one of its former employees, Mr. Klein.  The court recited the parties' "thorny

6    history" in its October 31, 2023 order (10/31/23 Order (Dkt. ## 46 (sealed), 48

7    (redacted))), and therefore focuses below on the background necessary to resolve the

8    pending motion.

9           CEMCO initiated this lawsuit on June 16, 2023.  (*See* Compl. (Dkt. # 1).)  In

10   relevant part, CEMCO asserts claims against Defendants for induced patent infringement

11   pursuant to 35 U.S.C. § 271(b), alleging that Defendants "instruct and/or encourage

12   customers to apply FRG tape to header tracks . . . knowing that the resulting head-of-wall

13   assembly would infringe at least one claim in each of the [Asserted] Patents."  (3rd Am.

14   Compl. (Dkt. # 69) ¶ 65; *see also id.* at 13-19 (alleging five counts of induced patent

15   infringement based on four asserted patents).)

16          CEMCO propounded its first set of requests for production ("RFPs") on October

17   30, 2023.  (5/8/24 Trojan Decl. (Dkt. # 85) ¶ 14.)  Although CEMCO followed up with

18   them several times, Defendants failed to respond to those RFPs until March 8, 2024,

19   nearly five months late.  (*Id.*; *see also id.* ¶ 9, Ex. 6.)  Moreover, Defendants' production

20   //

---

21          [1] CEMCO requests oral argument (Mot. at 1), but Defendants do not (*see* Resp. at 1).
     The court concludes that oral argument would not aid in its disposition of CEMCO's motion.
22   *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    consisted of just 390 pages of documents.  (*Id.* ¶ 15.)  CEMCO propounded additional

2    sets of RFPs and several sets of interrogatories on March 14 and 20, 2024.  (*Id.* ¶¶ 16-18.)

3    On April 16, 2024, KPSI responded to a set of CEMCO's interrogatories, asserting in

4    relevant part that "KPSI marks its products and purchase orders with language alerting

5    customers to CEMCO's patents and generally doesn't instruct its customers as to

6    anything."  (*Id.* ¶ 19, Ex. 14 at 7; *see also* 8/16/23 Ms. Klein Decl. (Dkt. # 27-1) ¶ 8(b)

7    ("[W]e never direct or encourage customers to place the strips at head of wall.").)

8    Defendants failed to timely respond to CEMCO's second and third sets of RFPs and at

9    least one set of interrogatories.  (5/28/24 Trojan Decl. ¶¶ 20-21.)

10            On May 5, 2024, CEMCO filed a motion to compel responses to its outstanding

11   requests for production and interrogatories.  (*See generally* 5/8/24 Mot. (Dkt. # 84).)  A

12   week later, CEMCO filed a motion to strike Defendants' affirmative defenses and

13   counterclaims.  (*See generally* 5/14/24 Mot. (Dkt. # 86).)  On June 4, 2024, the court held

14   a virtual hearing, during which it determined that Defendants' discovery misconduct had

15   jeopardized the trial date.  (*See* 6/4/24 Min. Entry (Dkt. # 98).)  The court moved several

16   dates, including the trial date and dates expert reports were due, and ordered Defendants

17   "to produce all responsive documents and supplement their interrogatory responses" by

18   June 14, 2024.  (*See generally* 6/4/24 Min. Order (Dkt. # 99)*.  See also* 6/5/24 Sched.

19   Order (Dkt. # 100).)  The court warned Defendants that their failure to produce all

20   responsive documents and supplement their interrogatory responses by June 14, 2024

21   would "result in severe sanctions, which may include monetary sanctions, adverse

22   inference instructions, and case-dispositive sanctions."  (6/4/24 Min. Order at 2.)  The

1   court set the June 14, 2024 deadline to afford the parties adequate time to prepare their

2   expert reports, which were due on July 8, 2024.  (*See* 6/5/24 Min. Entry (adjusting

3   deadline from Dkt. # 100).)  The court expressly instructed Defendants "to produce every

4   single email and text message James Klein and any other Defendant have sent to any of

5   KPSI's actual or potential customers."  (6/4/24 Min. Order at 2.)  The court warned

6   Defendants that they "and their counsel risk inviting the ire of the court if CEMCO

7   identifies even a single email or text message . . . that Defendants sent to one of KPSI's

8   customers and failed to produce."  (*Id.*)

9          On June 14, 2024, Defendants produced approximately 59,000 pages of

10  documents.  (7/8/24 Trojan Decl. (Dkt. #105) ¶ 14.)  Although CEMCO's RFPs defined

11  "document" to include "video recordings" (5/8/24 Trojan Decl. ¶ 16, Ex. 12 at 4; *id.* ¶ 17,

12  Ex. 13 at 4), Defendants did not produce any videos (7/8/24 Trojan Decl. ¶ 14).

13  Defendants did, however, produce certain "email flyers."  (*Id.*)

14         Although Defendants produced no videos, documents in Defendants' production

15  indicated that they existed.  For example, Defendants produced a July 2, 2023 email from

16  Mr. Klein, in which he writes to a customer "[t]hese are our first attempt at training

17  videos [and] . . . we are setting up to make these and a bunch more . . . to use and put on

18  line [*sic*]."  (*Id.* ¶ 2, Ex. 1.)  Defendants also produced an October 31, 2023 email

19  containing "a Google Drive link, which includes . . . the videos in their entirety."  (*Id.* ¶ 4,

20  Ex. 2.)  In response to that email, Mr. Klein "[a]ttached" his "first go at the amount of

21  mind numbing good information in the videos."  (*Id.*)  CEMCO also discovered that

22  Defendants posted 30 videos on the "Safti-Seal Inc." YouTube channel between May 24

1  and May 28, 2024.  (*Id.* ¶ 12.)  During his July 16, 2024 deposition, Mr. Klein testified

2  that he uploaded the videos to YouTube from the Google Drive.  (7/29/24 Trojan Decl.

3  (Dkt. # 110) ¶ 3, Ex. 11 at 76:25-77:2.)  CEMCO believes that approximately half of the

4  YouTube videos are "relevant to the FRG products or the UL Listings at issue in the

5  case."  (7/8/24 Trojan Decl. ¶ 12, Ex. 7.)  Indeed, CEMCO identifies one video that

6  features Mr. Klein and a KPSI salesman "in their own words and by their own hands,

7  instructing customers to affix FRG intumescent strip on the sidewalls of metal tracks for

8  a head-of-[w]all assembly."  (Mot. at 1-2 (citing 7/8/24 Trojan Decl. ¶ 17).)  CEMCO

9  also "found out from a contact in the industry that Defendants had emailed flyers to

10  customers on June 4, 2024, which [differed from the other flyers they had produced and]

11  contained links to the YouTube videos."  (*Id.* at 3.  *See generally* 7/8/24 Trojan Decl.

12  ¶ 13, Ex. 8.)

13      Defendants produced the videos on June 28, 2024, after CEMCO "confronted"

14  them about the missing production.  (7/8/24 Trojan Decl. ¶ 16.)  Defendants then

15  conducted a supplemental document collection on July 10, 2024, explaining that

16  "[b]ecause KPSI is an ongoing concern and additional potentially responsive material

17  was likely being created on an ongoing basis."  (Resp. at 9.)  Defendants did not produce

18  the missing email flyers until July 14, 2024—six days after the deadline for filing expert

19  reports.  (7/22/24 Bageant Decl. (Dkt. # 108) ¶ 3.)

20      CEMCO believes that its "ability to prepare its case for induced infringement for

21  trial has been severely impaired beyond remediation" as a result of Defendants'

22  //

ORDER - 5

1    continued failure to timely produce relevant discovery.  (Mot. at 14.)  On July 8, 2024, it

2    filed the present motion, which is now ripe for review.

3                                    **III.      ANALYSIS**

4            The court begins by providing the relevant legal standard before turning to

5    CEMCO's motion for sanctions.

6    **A.    Legal Standard**

7            "Federal courts possess certain 'inherent powers,' not conferred by rule or statute,

8    'to manage their own affairs so as to achieve the orderly and expeditious disposition of

9    cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link*

10   *v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  "That authority includes 'the ability to

11   fashion an appropriate sanction for conduct which abuses the judicial process.'"  *Id.*

12   (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).  "A district court may,

13   among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence,

14   award attorneys' fees, or assess fines."  *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075,

15   1088 (9th Cir. 2021); *see also Curtis v. Illumination Arts, Inc.*, No. C12-0991-JLR, 2013

16   WL 6173799, at *13 (W.D. Wash. Nov. 21, 2013) ("Default judgment is available as a

17   sanction in appropriate cases 'not merely to penalize those whose conduct may be

18   deemed to warrant such a sanction, but to deter those who might be tempted to such

19   conduct in the absence of such a deterrent.'" (quoting *Nat'l Hockey League v. Metro.*

20   *Hockey Club, Inc.*, 427 U.S. 639, 643 (1976))).

21           To impose sanctions pursuant to its inherent powers, "a district court must find

22   either:  (1) a willful violation of a court order; or (2) bad faith."  *Am. Unites*, 985 F.3d at

ORDER - 6

1    1090.  A finding of willfulness "does not require proof of mental intent . . . but rather, it is

2    enough that a party acted deliberately." *Id.*  Bad faith "sets a high threshold," *Primus*

3    *Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), and "requires proof

4    of bad intent or improper purpose," *Am. Unites*, 985 F.3d at 1090.  The "harsh sanction"

5    of dismissal is available if the offending party has also "engaged deliberately in deceptive

6    practices that undermine the integrity of judicial proceedings."  *Leon v. IDX Sys. Corp.*,

7    464 F.3d 951, 958 (9th Cir. 2006) (quoting *Anheuser-Busch, Inc. v. Nat. Beverage*

8    *Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).

9         To determine whether the issuance of dispositive sanctions is just, the court

10   considers five factors:  "(1) the public's interest in expedition resolution of litigation; (2)

11   the court's need to manage its dockets; (3) the risk of prejudice to the party seeking

12   sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the

13   availability of less drastic sanctions."  *Id.* (quoting *Anheuser-Busch*, 69 F.3d at 348).[2]

14   "The sub-parts of the fifth factor are whether the court has considered lesser sanctions,

15   whether it tried them, and whether it warned the recalcitrant party about the possibility of

16   case-dispositive sanctions."  *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482

17   F.3d 1091, 1096 (9th Cir. 2007).  Case-dispositive sanctions are appropriate "where at

18   least four factors support . . . or where at least three factors strongly support" their

19   issuance.  *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011); *see also Payne v.*

20   //

---

21        [2]  These are the same factors courts consider under Rule 37, and the Ninth Circuit "use[s]
     cases involving dismissal under Rule 37 and inherent powers interchangeably."  *Adriana Int'l*
22   *Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 n.4 (9th Cir. 1990).

1  *Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997) ("Where a court order is violated, the

2  first two factors support sanctions and the fourth factor cuts against a default. Therefore,

3  it is the third and fifth factors that are decisive." (quoting *Adriana*, 913 F.2d at 1412)).

4  This five-part "test" is not meant to be mechanical but rather to "provide[] the district

5  court with a way to think about what to do." *Conn. Gen. Life Ins.*, 482 F.3d at 1096.

6  **B.    CEMCO's Motion for Sanctions**

7         CEMCO argues that the court should issue case-dispositive sanctions for

8  Defendants' "failure to produce critical emails and videos showing the use of FRG on

9  head-of-wall assemblies in violation of the Court's June 4, 2024 Order" and award it

10 reasonable attorneys' fees pursuant to 35 U.S.C. § 285. (Mot. at 3.) Defendants deny

11 any wrongdoing and argue that dispositive sanctions would be overly "draconian and

12 heavy-handed." (Resp. at 3.) The court considers the parties' arguments below.

13                    *i.    Willfulness or Bad Faith*

14        First, the court must determine whether Defendants willfully or in bad faith

15 violated its June 4, 2024 order. CEMCO argues that Defendants "persistently broke the

16 discovery rules" and then "concealed evidence . . . after being ordered to produce it."

17 (Mot. at 15.) Defendants respond that "KPSI did not 'willfully' withhold any

18 discoverable information because it did not withhold any information at all." (Resp. at

19 7.)

20        The court has little difficulty concluding that Defendants willfully and in bad faith

21 violated its June 4, 2024 order and did so in a deliberate attempt to withhold damaging

22 evidence. The court ordered Defendants "to produce ***all responsive documents*** . . . by

1    June 14, 2024." (6/4/24 Min. Order at 2 (emphasis added).) Defendants, however, did

2    not do so. Defendants posted the videos on YouTube between May 24 and 28, 2024.

3    (7/8/24 Trojan Decl. ¶ 12, Ex. 7.) Although Defendants acknowledge that the videos are

4    "relevant" (Resp. at 1), they did not produce them by June 14, 2024. Defendants also did

5    not produce the email flyers even though they sent them out the same day the court issued

6    its minute order instructing Defendants to produce all relevant discovery. Defendants

7    argue that "material created between May 22, 2024, and June 14, 2024, was not included

8    . . . because it was newly generated" (Resp. at 7), but there are three issues with that

9    argument. First, the court ordered Defendants to produce "all responsive documents" and

10   did not allow for an arbitrary cutoff window. (6/4/24 Min. Order at 2.) Second, the

11   videos were in the works as of July and October 2023, so at least some of the footage was

12   not "newly generated." (*See* 7/8/24 Trojan Decl. ¶ 2, Ex. 1.) And third, Defendants

13   produced sales information through June 13, 2024 (7/29/24 Trojan Decl. ¶ 2), meaning

14   they selectively produced some, but not all, "newly generated" responsive documents.

15   Defendants also argue that they produced "correspondence about the Videos, and links to

16   the Videos" (Resp. at 7), but a breadcrumb trail is no substitute for actual document

17   production. Simply put, Defendants withheld videos that show Mr. Klein installing FRG

18   tape on header tracks—evidence that KPSI's interrogatory response that it "generally

19   doesn't instruct its customers as to anything" was untruthful and that Ms. Klein perjured

20   herself in declaring that "[w]e never direct or encourage customers to place the strips at

21   head of wall." (5/8/24 Trojan Decl. ¶ 19, Ex. 14 at 7; 8/16/23 Ms. Klein Decl. ¶ 8(b).)

22   Defendants willfully and in bad faith violated the court's June 4, 2024 order by not

1  producing the videos and email flyers, and their conduct has undermined the integrity of

2  these proceedings.

3         *ii.*     *Five-Factor Test*

4         Next, the court must weigh the relevant factors to determine whether dispositive

5  sanctions would be just.  CEMCO argues that the relevant factors, particularly prejudice,

6  weigh in favor of dispositive sanctions.  (Mot. at 13.)  Defendants respond that CEMCO

7  has not been prejudiced and that the factors do not support dispositive sanctions.  (Resp.

8  at 9.)  Although the court concludes that dispositive sanctions are warranted as to some

9  issues, the court does not agree with CEMCO that Defendants' misconduct warrants

10  disposition of the entire case.

11         From the outset, the court concludes that the first two factors, the public's interest

12  in expeditious resolution of litigation and the court's need to manage its docket, strongly

13  support the issuance of dispositive sanctions.  *See Payne*, 121 F.3d at 507.  Defendants'

14  misconduct and disregard for the discovery rules have already delayed this matter, and

15  Defendants willfully disobeyed the court's June 4, 2024 order, which set a strict

16  production deadline to get this case back on track.  However, the fourth factor—the

17  policy favoring resolution of cases on their merits—"always weighs against dismissal."

18  *Dreith*, 648 F.3d at 788.  Thus, as CEMCO acknowledges, the "key factors . . . are

19  prejudice and the availability of lesser sanctions."  (Mot. at 13.)

20         The court concludes that CEMCO has been severely prejudiced by Defendants'

21  extensive discovery misconduct stretching back to late 2023.  A party suffers prejudice if

22  its adversary's misconduct has impaired its "ability to prove the claims" or "threaten[ed]

1   to interfere with the rightful decision of the case." *Wanderer v. Johnston*, 910 F.2d 652,

2   656 (9th Cir. 1990).  "Failure to produce documents as ordered . . . is considered

3   sufficient prejudice."  *Adriana*, 913 F.2d at 1412 (holding that a party's "repeated failure"

4   to appear at depositions "compounded by their continuing refusal to comply with

5   court-ordered production of documents constitutes an interference with the rightful

6   decision of the case").  Defendants have both impaired CEMCO's ability to prove its

7   claims and interfered with the "rightful decision" of this case by stonewalling CEMCO

8   throughout nearly the entire discovery period, violating the discovery rules and this

9   court's June 4, 2024 order along the way.  In particular, the court agrees with CEMCO

10  that Defendants' actions have hampered its ability to conduct third-party discovery.  This

11  is especially concerning given Mr. Klein's recent deposition testimony that KPSI sent the

12  email flyers to "6,000 . . . [a]rchitects, contractors, inspectors, [and] fire stoppers."

13  (7/29/24 Trojan Decl. ¶ 3, Ex. 11 at 46:21-23.)  Given this history, the court cannot help

14  but anticipate continued misconduct from Defendants.

15      The court further concludes that nothing short of a default against Defendants

16  would remedy the prejudice CEMCO has suffered, adequately punish Defendants, and

17  serve to deter others from engaging in similar egregious behavior.  Although the court

18  has not yet sanctioned Defendants (in this case, at least),[3] the court warned Defendants of

19  the risk of case-dispositive sanctions in its June 4, 2024 order.  (6/4/24 Min. Order at 2.)

20  //

21      [3] *See* Order at 22-23, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D.
    Wash. Nov. 21, 2023), Dkt. # 377 (holding Mr. Klein personally liable for over $1 million in
22  fees and costs as a compensatory civil contempt sanction).

1  CEMCO's request that the court dispose of the entire case, however, goes beyond what is

2  necessary to remedy the present injustice and punish Defendants.  (*See* Prop. Order (Dkt.

3  # 104-1).)  Because Defendants' misconduct has primarily impacted CEMCO's ability to

4  prove induced patent infringement, the court concludes that the appropriate sanction is as

5  follows:  (1) the court will enter default against Defendants with respect to CEMCO's

6  claims for induced patent infringement; (2) the court will strike all of Defendants'

7  affirmative defenses except numbers 10 and 11, which concern validity; and (3) the court

8  will strike Defendants' counterclaims to the extent that Defendants seek "declaratory

9  judgment of non-infringement" (Answer (Dkt. # 83) at 11) but not to the extent that

10  Defendants seek declaratory judgment of invalidity.  These sanctions have no impact on

11  CEMCO's claims concerning the alleged fraudulent transfer of assets.

12  ## IV.    CONCLUSION

13      For the foregoing reasons, the court GRANTS in part CEMCO's motion for

14  sanctions (Dkt. # 104).  The court (1) ENTERS DEFAULT against Defendants with

15  respect to CEMCO's claims for induced patent infringement in violation of 35 U.S.C.

16  § 271(b); (2) STRIKES Defendants' affirmative defenses except for numbers 10 and 11

17  concerning validity; and (3) STRIKES Defendants' counterclaims to the extent that they

18  seek declaratory judgment of non-infringement.  The court DENIES CEMCO's request

19  for attorneys' fees under 35 U.S.C. § 285 without prejudice to refiling the request at a

20  later time should CEMCO prevail on validity.  The court will, however, GRANT

21  CEMCO the reasonable attorneys' fees and costs it incurred in drafting the present

22  //

motion and reply brief.  CEMCO must file its motion for attorneys' fees and costs by no later than **August 27, 2024**.

Dated this 13th day of August, 2024.

JAMES L. ROBART
United States District Judge