1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CEMCO, LLC,

CASE NO. C23-0918JLR

11

Plaintiff,

FINAL JURY INSTRUCTIONS

v.

12

KPSI INNOVATIONS, INC., et al.,

13

Defendants.

14

15

16

Dated this 6th day of December, 2024.

17

18

JAMES L. ROBART
United States District Judge

19

20

21

22

## JURY INSTRUCTION NO. 1

Members of the jury:  Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

You have been provided with a copy of these instructions for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

JURY INSTRUCTION NO. 2

The evidence you are to consider in deciding what the facts are consists of:

1.      The sworn testimony of any witness;

2.      The exhibits that are admitted into evidence;

3.      Any facts to which the lawyers have agreed; and

4.      Any facts that I may instruct you to accept as proved.

JURY INSTRUCTION NO. 3

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

First, arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

Second, questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

Third, testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

Fourth, anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## JURY INSTRUCTION NO. 4

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

JURY INSTRUCTION NO. 5

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question was answered or the exhibit received. If I sustained the objection, the question was not answered, and the exhibit was not received. Whenever I sustained an objection to a question, you were to ignore the question and not guess what the answer might have been.

If I ordered that evidence be stricken from the record, then you must disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

1

## JURY INSTRUCTION NO. 6

2      Some evidence was admitted only for a limited purpose.

3      When I instructed you that an item of evidence has been admitted only for a

4  limited purpose, you must consider it only for that limited purpose and not for any other

5  purpose.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# JURY INSTRUCTION NO. 7

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

*[continue to next page]*

1    However, if you decide that a witness has deliberately testified untruthfully about

2    something important, you may choose not to believe anything that witness said.  On the

3    other hand, if you think the witness testified untruthfully about some things but told the

4    truth about others, you may accept the part you think is true and ignore the rest.

5    The weight of the evidence as to a fact does not necessarily depend on the number

6    of witnesses who testify.  What is important is how believable the witnesses were, and

7    how much weight you think their testimony deserves.

1                     JURY INSTRUCTION NO. 8

2        The parties have agreed to certain facts to be placed in evidence as Exhibit 500.

3 You must therefore treat these facts as having been proved.

JURY INSTRUCTION NO. 9

Deposition testimony was presented to you.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider that deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

JURY INSTRUCTION NO. 10

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.

These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

1

JURY INSTRUCTION NO. 11

2

You heard testimony from experts who testified to their opinions and the reasons

3

for those opinions. This opinion testimony was allowed, because of the education or

4

experience of these witnesses.

5

Such opinion testimony should be judged like any other testimony. You may

6

accept it or reject it, and give it as much weight as you think it deserves, considering the

7

witnesses' specialized knowledge, skill, experience, training, or education, the reasons

8

given for their opinions, and all the other evidence in the case.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

JURY INSTRUCTION NO. 12

Certain charts and summaries not admitted into evidence were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## JURY INSTRUCTION NO. 13

Certain charts and summaries were admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

JURY INSTRUCTION NO. 14

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

JURY INSTRUCTION NO. 15

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

1

JURY INSTRUCTION NO. 16

2          A corporate officer or director who engages in tortious conduct is not excused

3    from personal liability for the tort, just because the officer or director may have acted to

4    benefit the corporation.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

JURY INSTRUCTION NO. 17

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

JURY INSTRUCTION NO. 18

This case involves a dispute relating to several United States patents.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by means of a lawsuit filed in federal court. To obtain a patent one must file an application with the PTO. The process of obtaining a patent is called patent prosecution. The PTO is an agency of the federal government and employs trained patent examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

JURY INSTRUCTION NO. 19

A patent's claims define what is covered by the patent. A product directly infringes a patent if it is covered by at least one claim of the patent. Ownership of a patent does not confer a right to use subject matter that is covered by other patents.

I have already entered default against Defendants with respect to CEMCO's claims for induced patent infringement. This means that the Defendants cannot dispute that they induced infringement of the Patents, and they cannot dispute that the Patents are valid.

JURY INSTRUCTION NO. 20

You must determine the amount of damages to be awarded to CEMCO for the induced infringement.

CEMCO must prove each element of its damages—including the amount of the damages—by a preponderance of the evidence, which means more likely than not.

If proven by CEMCO, damages must be in an amount adequate to compensate CEMCO for the infringement.  The purpose of a damages award is to put CEMCO in about the same financial position it would have been in if the infringement had not happened.  But the damages award cannot be less than a reasonable royalty.  You may not add anything to the amount of damages to punish an accused infringer or to set an example.  You also may not add anything to the amount of damages for interest.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## JURY INSTRUCTION NO. 21

CEMCO and Defendants agree that the date for the start of any damages calculation is February 8, 2023.

1

JURY INSTRUCTION NO. 22

2

     The amount of damages that Defendants must pay CEMCO for infringing

3

CEMCO's Patents must be enough to compensate for the infringement, but may not be

4

less than a reasonable royalty for the use of CEMCO's invention.

5

     You must award CEMCO a reasonable royalty in an amount that CEMCO has

6

proven it could have earned on any infringing sales.  A royalty is a payment made to a

7

patent owner by someone else in exchange for the rights to make, use, sell, or import a

8

patented product.

9

     The reasonable royalty award must be based on the incremental value that the

10

patented invention adds to the end product.  When the infringing FRG products have both

11

patented and unpatented features, measuring this value requires a determination of the

12

value added by the patented features.  The total royalty must reflect the value attributable

13

to the infringing features of the FRG products, and no more.

14

15

16

17

18

19

20

21

22

FINAL JURY INSTRUCTIONS - 24

JURY INSTRUCTION NO. 23

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between CEMCO and Defendants. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the Patents were valid and infringed and both were willing to enter into a license just before the infringement began. You should also assume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

JURY INSTRUCTION NO. 24

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the Patents:

1.  Any royalties received by the licensor for the licensing of the Patents, proving or tending to prove an established royalty.

2.  The rates paid by the Defendants to license other patents comparable to the Patents.

3.  The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.  The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.  The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.  The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.  The duration of the Patents and the term of the license.

8.  The established profitability of the product made under the Patents; its commercial success; and its popularity.

9.  The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.  The extent to which Defendants have made use of the invention; and any evidence that shows the value of that use.

12.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.  The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.  The opinion testimony of qualified experts.

[*continue to next page*]

1    15.  The amount that a licensor and a licensee (such as Defendants) would have

2    agreed upon (at the time the infringement began) if both sides had been reasonably and

3    voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—

4    who desired, as a business proposition, to obtain a license to manufacture and sell a

5    particular article embodying the patented invention—would have been willing to pay as a

6    royalty and yet be able to make a reasonable profit and which amount would have been

7    acceptable by a patentee who was willing to grant a license.

8    16.  Any other economic factor that a normally prudent business person would,

9    under similar circumstances, take into consideration in negotiating the hypothetical

10   license.

JURY INSTRUCTION NO. 25

The amount you find as damages must be based on the value attributable to the patented features, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, Defendants' size, or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

JURY INSTRUCTION NO. 26

A multi-component product may have both infringing and non-infringing components.  In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention.  Where the product contains non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology.  This may involve estimating the value of a feature that may not have ever been individually sold.

The entire market value rule is a narrow exception to this general rule.  In order to recover damages as a percentage of revenues or profits attributable to the entire product, CEMCO must establish that it is more likely than not that the patented feature drives the demand for an entire multi-component product such that it creates the basis for customer demand or substantially creates the value of the product.

JURY INSTRUCTION NO. 27

You may award separate royalties to CEMCO for each patent that was infringed. You also may consider evidence of the number of patent licenses that are needed for the infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

JURY INSTRUCTION NO. 28

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon at the time of the negotiation. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

JURY INSTRUCTION NO. 29

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention.  An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

1

JURY INSTRUCTION NO. 30

2

When determining a reasonable royalty, you may consider evidence concerning

3

the amounts that other parties have paid for rights to the Patents in question, or for

4

comparable rights to similar technologies.  A license agreement need not be perfectly

5

comparable to a hypothetical license that would be negotiated between CEMCO and

6

Defendants in order for you to consider it.  However, if you choose to rely upon evidence

7

from any license agreements, you must account for any differences between those

8

licenses and the hypothetically negotiated license between CEMCO and Defendants, in

9

terms of the technologies and economic circumstances of the contracting parties, when

10

you make your reasonable royalty determination.

11

12

13

14

15

16

17

18

19

20

21

22

JURY INSTRUCTION NO. 31

Any doubts that you may have on the issue of damages due to Defendants' failure to keep proper records should be decided in favor of CEMCO.  Any confusion or difficulties caused by Defendants' records or lack of records also should be held against Defendants, not CEMCO.

JURY INSTRUCTION NO. 32

In this case, CEMCO contends that Defendants willfully infringed the Patents.

To prove willful infringement, a plaintiff would normally have to persuade you that the defendant infringed a claim of the Patents, but I have already found Defendants in default on CEMCO's claims of induced infringement of the Patents as discussed in my prior instructions.

To show that Defendants' infringement was willful, CEMCO must prove by a preponderance of the evidence that Defendants knew of CEMCO's Patents and intentionally induced infringement of at least one asserted claim of the Patents. Defendants have admitted they knew about CEMCO's Patents prior to the lawsuit.

Thus, you need only consider whether Defendants' induced infringement was deliberate or intentional. In determining whether Defendants' infringement was willful, you must consider all of the circumstances and assess Defendants' knowledge at the time the challenged conduct occurred, including: whether Defendants intentionally copied CEMCO's patented technology in developing the FRG product; whether Defendants knew, or should have known, that their conduct involved an unreasonable risk of infringement; and whether Defendants had a reasonable belief that at the time of infringement that the FRG product did not infringe the Patents or that the Patents were invalid. Knowledge of infringement can be inferred from circumstantial evidence.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

JURY INSTRUCTION NO. 33

CEMCO contends that S4S fraudulently transferred assets to KPSI and Serina Klein.  The following instructions concern the fraudulent transfer claim and use the terms below:

An "asset" is the property of a debtor.

A "creditor" is a party who has a right to payment , whether or not the right to payment is reduced to judgment, contingent, matured, un-matured, disputed, or undisputed.

"Reasonably equivalent value" includes, without limitation, a transfer or an obligation that is within the range of values for which the transferor would have sold the property or services to, or purchased the property or services from, the transferee in an arm's length transaction at market rates.

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

JURY INSTRUCTION NO. 34

The first method CEMCO may use to prove that a transfer is fraudulent is to prove that S4S actually intended to hinder, delay, or defraud CEMCO by transferring the assets to Defendants KPSI and Serina Klein.

In determining S4S's actual intent, you may consider, among other factors, whether:

(1) the transfer to Defendants KPSI and Serina Klein was to an insider;

(2) S4S retained possession or control of the asset after the transfer;

(3) the transfer was disclosed or concealed;

(4) before the transfer, S4S was sued or threatened with suit;

(5) the transfer was of substantially all of S4S' assets;

(6) S4S absconded;

(7) S4S removed or concealed assets;

(8) The value of the consideration received by S4S was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) S4S was insolvent or became insolvent soon after the transfer;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred by S4S; and/or

(11) S4S transferred the essential assets of the business to a lienor that transferred the assets to an insider of S4S.

[*continue to next page*]

1       If you find that CEMCO has proven by a preponderance of the evidence that S4S

2    actually intended to hinder, delay, or defraud CEMCO by transferring the assets to

3    Defendants KPSI and Serina Klein, you should find in favor of CEMCO on its fraudulent

4    transfer claim.  Otherwise, you should find in favor of Defendants KPSI and Serina

5    Klein.

1

JURY INSTRUCTION NO. 35

2      The second method CEMCO may use to prove that a transfer is fraudulent is to

3 prove that S4S transferred the assets without receiving a reasonably equivalent value, and

4 transferred so many assets that it was left with an unreasonably small amount of assets.

5      To prove that a transfer was fraudulent using this method, CEMCO must prove

6 that S4S transferred the assets to Defendants KPSI and Serina Klein under the following

7 circumstances:

8      (1) Without receiving a reasonably equivalent value from Defendants KPSI and

9 Serina Klein in exchange for the transfer; AND

10     (2) S4S:

11          a. Was engaged or was about to engage in a business or a transaction for

12          which the remaining assets of the S4S were unreasonably small in relation

13          to the business or transaction; OR

14          b. Intended to incur, or believed or reasonably should have believed that

15          S4S would incur, debts beyond S4S's ability to pay as they became due.

16     If you find that CEMCO has proven these circumstances by a preponderance of

17 the evidence, you should find in favor of CEMCO on its fraudulent transfer claim.

18 Otherwise, you should find in favor of Defendants KPSI and Serina Klein.

19

20

21

22

JURY INSTRUCTION NO. 36

The third method CEMCO may use to prove that a transfer is fraudulent is to prove that S4S transferred the assets after CEMCO's right to payment from S4S arose, under certain circumstances.

To prove that a transfer was fraudulent using this method, CEMCO must prove that S4S transferred the assets to Defendants KPSI and Serina Klein under the following circumstances:

(1) S4S transferred the assets after CEMCO's right to payment from S4S arose, the transfer occurred without receiving a reasonably equivalent value from Defendants KPSI and Serina Klein in exchange for the transfer; and S4S was insolvent at that time or became insolvent as a result; OR

(2) S4S transferred the assets after CEMCO's right to payment from S4S arose, S4S transferred the assets to an insider for a debt, S4S was insolvent at the time, and the insider had reasonable cause to believe that S4S was insolvent.

If you find that CEMCO has proven these circumstances by a preponderance of the evidence, you should find in favor of CEMCO on its fraudulent transfer claim. Otherwise, you should find in favor of Defendants KPSI and Serina Klein.

JURY INSTRUCTION NO. 37

To determine whether a debtor is insolvent, you should consider that:

1.  A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets.

2.  A debtor who is generally not paying its debts as they become due other than as a result of a genuine dispute is presumed to be insolvent.

JURY INSTRUCTION NO. 38

Value is given for a transfer if, in exchange for the transfer, property is transferred or a preexisting debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

JURY INSTRUCTION NO. 39

If S4S has made a fraudulent transfer to Defendants KPSI and Serina Klein, CEMCO may recover judgment against the first transferee of the asset or the person for whose benefit the transfer was made.

A transfer by S4S is not fraudulent if Defendants KPSI and/or Serina Klein took the transfer in good faith and for a reasonably equivalent value, whether or not given to CEMCO.

JURY INSTRUCTION NO. 40

It is the duty of the Court to instruct you about measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If your verdict is for CEMCO on its fraudulent transfer claim, you must determine CEMCO's damages.  CEMCO has the burden of proving damages by a preponderance of the evidence.  Damages available to CEMCO under claims for fraudulent transfer are (1) the value of assets improperly transferred, or (2) the amount necessary to satisfy CEMCO's right to payment from the debtor, whichever is less.  If you determine the transferee took the transferred asset in good faith, damages must be reduced by the amount the transferee gave to the debtor for the asset.

The value of the asset must be measured at the time of the transfer.

It is for you to determine what damages, if any, have been proven.

Any award for damages must be based upon evidence and not upon speculation, guesswork or conjecture.

JURY INSTRUCTION NO. 41

You should decide the case as to each defendant separately.  Unless otherwise stated, the instructions apply to all parties.

## JURY INSTRUCTION NO. 42

Before you begin your deliberations, elect one member of the jury as your foreperson. The foreperson will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

JURY INSTRUCTION NO. 43

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or

view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

JURY INSTRUCTION NO. 44

You had permission to take notes to help you remember the evidence.  If you took notes, please keep them to yourself until you go to the jury room to decide the case.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

JURY INSTRUCTION NO. 45

Exhibits capable of being displayed electronically will be provided to you in the jury room.  A computer, large screen monitor and accessory equipment will be available.

The courtroom deputy or IT staff will show you how to operate the computer, locate and view the exhibits.  A paper list of exhibits received in evidence will also be provided.  If you need additional equipment or supplies, you may make a request by sending a note to the courtroom deputy.

If technical problems or questions about how to operate the computer occur, send a note to the courtroom deputy, signed by your foreperson or by one or more members of the jury.  Be as brief as possible in describing the problem.  Do not refer to or discuss any exhibit you were attempting to view.

If technical problems or questions require hands-on maintenance or instruction, IT staff will enter the jury room with the courtroom deputy.  The only matter to be discussed is the technical problem.  When a court technician or any non-juror is in the room, the jury shall not deliberate.  Jurors should only describe the technical problem or to seek information about operation of equipment, not discuss any exhibit or any aspect of the case.

The purpose of providing the computer in the jury room is to view the exhibits received in evidence.

[*continue to next page*]

1

2          You may not use the computer for any other purpose.  Per court policy,

3    technicians have taken steps to make sure that the computer does not permit access to the

4    internet or to any "outside" material.  Do not attempt to alter the computer to gain access

5    to other material.  If you discover that the computer provides or allows access to outside

6    sources, you must inform the courtroom deputy immediately and stop viewing the

7    information.  Do not remove the computer or any electronic data from the jury room, and

8    do not copy any data.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

JURY INSTRUCTION NO. 46

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court.  If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1

JURY INSTRUCTION NO. 47

2

A verdict form has been prepared for you.  The verdict form is made up of a

3
number of questions, including yes or no questions.  After you have reached unanimous

4
agreement on a verdict, your foreperson should complete the verdict form, checking yes

5
or no for each question according to your deliberations, sign and date it, and advise the

6
courtroom deputy that you are ready to return to the courtroom.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22