UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CEMCO, LLC,

Plaintiff,

v.

KPSI INNOVATION, INC., et al.,

Defendants.

CASE NO. C23-0918JLR

ORDER

## I. INTRODUCTION

Before the court is Plaintiff CEMCO, LLC's ("CEMCO") motion to hold Defendants KPSI Innovation, Inc. ("KPSI"), James A. Klein ("Mr. Klein"), Serina Klein ("Ms. Klein"), and Kevin Klein ("Kevin")[1] (collectively, "Defendants") and non-party David M. Tullis in contempt for violating the court's Permanent Injunction ("PI"). (Mot. (Dkt. # 289); Reply (Dkt. # 299); *see also* PI (Dkt. # 247); Amended PI (Dkt. # 301).)

[1] To avoid confusion between James A. Klein and Kevin Klein, the court refers to Kevin Klein by his first name, "Kevin," instead of "Mr. Klein."

Defendants oppose the motion. (Resp. (Dkt. # 297).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised,[2] the court GRANTS the motion for civil contempt as to Mr. Klein, Ms. Klein, Mr. Tullis, and KPSI. The court DENIES the motion as to Kevin. The court also ORDERS further proceedings on contempt damages and criminal contempt.

## II. BACKGROUND

This matter arises from Defendants' infringement of four patents owned by CEMCO: U.S. Patent Nos. 7,681,365 (the "'365 Patent"); 7,814,718 (the "'718 Patent"); 8,136,314 (the "'314 Patent"); and 8,151,526 (the "'526 Patent") (collectively, "the Patents"). (Mot. at 2 n1.) CEMCO's motion for contempt is the latest installment in a long and "tumultuous history" already well-documented by this court; this order incorporates those prior background sections and adds only the facts relevant to the instant motion. (*See, e.g.*, Amended PI at 1-6; MSJ Order (Dkt. # 149) at 2-7; 8/13/24 Order (Dkt. # 111) at 2-6); *see also* 1/26/23 Order, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D. Wash. Jan. 26, 2023), Dkt. # 332 at 3 (providing citations to additional background).

CEMCO initiated this lawsuit in June 2023. (*See* Compl. (Dkt. # 1); *see also* 3d Am. Compl. (Dkt. # 69).) It alleged in part that Defendants induced infringement of the

[2] CEMCO requests oral argument and Defendants do not. (*See* Mot. at 1; Resp.) The court concludes that oral argument would not aid in its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

Patents by instructing customers to apply fire rated gasket ("FRG") products to head-of-wall tracks in an infringing manner. (3d Am. Compl. ¶¶ 91-139.)

On December 9, 2024, a jury found that Mr. Klein, Ms. Klein, and KPSI willfully induced infringement of the Patents and awarded damages to CEMCO on all of its claims. (Verdict (Dkt. ## 213 (sealed), 214 (redacted)).) CEMCO, however, failed to prove by a preponderance of the evidence that Kevin willfully induced patent infringement. (*Id.*) On December 23, 2024, CEMCO moved for a permanent injunction. (12/23/24 PI Mot. (Dkt. # 219).)

On February 28, 2025, the court issued a permanent injunction against the Defendants. (*See generally* PI.) On July 7, 2026, the court amended the injunction to account for reexamination of the Patents by the United States Patent and Trademark Office ("USPTO"). (*See generally* Amended PI.) The Amended PI orders that, for the life of the Patents or until any claims therein are amended with finality, Defendants are enjoined from the following:

> 1. Making, using, offering to sell, or selling FRG Products or any product that is not more than colorably different from FRG Products (the "Intumescent Products") for use in fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents;
>
> 2. Providing instructions in any medium (e.g., videos, in-person training, pamphlets, brochures, installation instructions, websites, and invoices) for using the Intumescent Products in fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents;
>
> 3. Referencing certifications from any third-party agency related to fire-safety or building code compliance, including but not limited to UL listings (collectively, "Third-Party Safety Certification"), concerning the Intumescent Products used for fire-rated head-of-wall constructions or

assemblies as covered by the claims of the Patents, in any advertising or communications with customers or prospective customers; [][3]

4. Displaying or disseminating any Third-Party Safety Certification concerning the Intumescent Products used for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents, in any medium (e.g., videos, in-person training, pamphlets, brochures, installation instructions, websites, and invoices);

5. Transferring or facilitating the transfer of any Third-Party Safety Certification or data files associated therewith concerning the Intumescent Products used for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents, to any person or entity;

6. Modifying or submitting any proposal for modifying any Third-Party Safety Certification, where the modification depicts, describes, or references using the Intumescent Products for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents;

7. Creating or facilitating the creation of any Third-Party Safety Certification that depicts, describes, or references using the Intumescent Products for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents; and

8. Providing technical support, including engineering judgments, for Intumescent Products used for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents.

(Amended PI at 7-9.) In addition, the court ordered Defendants to remove, by March 7, 2025, any third-party safety certifications that refer to "the Use of the Intumescent Products for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents" from its websites and advertising materials; send a notice that such certifications were removed; and send a copy of the injunction order to each customer.

[3] The court identified a typographical error in its Amended PI order where it included extraneous text. (*See* Amended PI at 8.) For clarity, the court omits that text here.

(*Id.* at 11.) The court entered judgment on March 3, 2025, and Defendants filed a notice of appeal on April 2, 2025. (*See* 3/3/25 Judgment (Dkt. # 248); NOA (Dkt. # 249).)

After the court granted CEMCO's motion to reopen the case to initiate contempt proceedings, CEMCO filed the present contempt motion on April 16, 2026. (*See generally* 10/1/25 Order (Dkt. # 276); Mot.; Reply.) CEMCO alleges that Defendants violated the Amended PI in four ways: (1) failing to provide customers with timely notice of the injunction; (2) continuing to sell FRG after the injunction issued; (3) selling Smoke-n-Fire Gasket ("SFG") products, which it asserts are not more than colorably different from FRG products; and (4) modifying and submitting new Underwriters Laboratories ("UL") certifications for SFG products to induce infringement of the Patents. (Mot. at 2.) Additionally, CEMCO requests that the court find Mr. Tullis, KPSI's vice president of sales and marketing, in contempt for his role in effectuating the violations. (*Id.* at 4.) CEMCO further moves to initiate criminal contempt proceedings against Mr. and Ms. Klein "because they have *willfully* disobeyed the Injunction and *committed fraud on the Court* in trying to cover it up." (*Id.* (emphasis in original).) The motion is fully briefed and ripe for decision.

## III. ANALYSIS

The court addresses CEMCO's civil contempt arguments before turning to its criminal contempt arguments.

### A. Civil Contempt

This court possesses inherent authority and wide discretion to enforce compliance with its orders through civil contempt. *California Dep't of Soc. Servs. v. Leavitt*, 523

F.3d 1025, 1033 (9th Cir. 2008) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984) (citation omitted). To establish civil contempt, "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted). If the movant succeeds, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* Contempt need not be willful and lacks a good-faith exception. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Substantial compliance, however, is a defense to contempt, and a technical or inadvertent violation will not warrant contempt where the party has taken "all reasonable steps" to comply. *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (citation omitted).

To succeed on a contempt motion in a patent matter, "the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (en banc). The analysis should "focus initially on the differences between the features relied upon to establish infringement and the modified features of the newly accused products" before considering whether the new product actually infringes. *Id.*

1. <u>Defendants Violated the Customer Notice Requirements.</u>

CEMCO asserts that Defendants failed to satisfy their notice obligations under the injunction. (*See* Mot. at 8-9; Reply at 3-4.) Specifically, CEMCO asserts—and the

record reflects—that Defendants violated the injunction by sending only 24 notices by the March 7, 2025, deadline despite the presence of 76 customers on the trial exhibit list. (Mot. at 9; *see also* Trojan Decl. (Dkt. # 290) ¶ 13, Ex. 12 (Customer List) (showing approximately 76 customers); Tullis Decl. ¶ 3 (Dkt. # 270), Ex. 1 (Notice Emails) (showing 24 notices sent by email on March 7, 2025).) The court agrees for the reasons set forth below.

Defendants do not meaningfully contest these allegations. (*See* Resp. at 15-17.) In fact, they concede that the record "may support a finding that the original notice process was incomplete." (*Id.* at 16.) Defendants nevertheless argue that they are not in contempt of the notice requirement because they "took reasonable steps to comply" by relying on "a computer-generated list of customers who had purchased FRG" and tasking Mr. Tullis with emailing all customers on the list. (*Id.*)

This argument is unavailing. As Defendants themselves acknowledge, "[t]he civil-contempt question is whether Defendants failed to take *all* reasonable steps within their power to comply," (*id.* at 16-17), not merely whether they took *some* reasonable steps. *See Gen. Signal Corp.*, 787 F.2d at 1379. Here, Defendants failed to take even basic steps toward compliance, like referring to their own customer list exhibit from the preceding trial or confirming that Mr. Tullis had sent the notices to each customer on the computer-generated list. (*See* Trojan Decl. ¶ 49, Ex. 152 (Ms. Klein Dep.) at 49:11-50:7 (acknowledging that Ms. Klein did "nothing" to confirm all customers received notice).)

Furthermore, even if Defendants had made a good-faith effort to comply with their notice obligations initially, they failed to promptly correct the notice deficiencies.

CEMCO first moved to reopen this case to initiate contempt proceedings on August 8, 2025. (*See generally* Mot. to Reopen (Dkt. # 263).) In that filing, CEMCO explicitly stated that it had "reason to believe that Defendants may not have fully complied with the Court's order to" send copies of the injunction to each customer. (*Id.* at 16.) Defendants still did not send notices to additional customers until March 6, 2026. (Mot. at 2, 9; Trojan Decl. ¶ 46, Ex. 149 (KPSI Rog Responses) at 4-7.) Defendants provide no information indicating that they made good-faith efforts to complete the notice requirements once CEMCO indicated the initial communication was insufficient. Accordingly, the court finds by clear and convincing evidence that Defendants violated the injunction's notice requirements, and that Defendants failed to show substantial compliance.

2. <u>Defendants Continued Selling Infringing FRG Products Post-Injunction.</u>

Next, CEMCO alleges that Defendants continued selling FRG products for infringing purposes for months after the court issued the injunction. (Mot. at 11-13.) To support this allegation, CEMCO points to KPSI sales orders that show it sold tens of thousands of dollars of FRG in April and May 2025.[4] (*Id.* at 11; Trojan Decl. ¶ 54, Ex. 157.) In response, Defendants do not dispute the FRG Sales. (*See* Resp. 14-15.) Instead, Defendants primarily contend that customers can use FRG in noninfringing ways, asserting that "CEMCO must show the accused post-injunction sales were for claim-covered use" to satisfy its burden on contempt. (*Id.* at 14.) Defendants reason that

---

[4] CEMCO notes that it cannot provide FRG sales figures for March 2025 because Defendants failed to produce their sales records for that period. (Mot. at 11.)

CEMCO cannot establish contempt by sales data alone because CEMCO cannot show that KPSI's FRG sales resulted in "claim-covered installation." (*Id.* at 15.)

The court is not persuaded by Defendants' argument because it misconstrues the injunction. The injunction bars Defendants from "selling FRG Products . . . for use in fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents[.]" (Amended PI at 7.) The plain language does not require Defendants' customers to actually install the FRG in an infringing manner for a violation to occur—rather, the products simply need to be sold for that use. *See BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, 475 F. Supp. 3d 1235, 1240 (W.D. Wash. 2020) (interpreting an injunction by examining the plain language); *see also KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1528 (Fed. Cir. 1985), *overruled on other grounds by TiVo*, 646 F.3d at 881 (noting that "the issue in contempt proceedings is violation *vel non* of the injunction, not patent infringement"). Although Mr. Klein claimed he lacked knowledge how his customers would use the FRG after the sale, (*See* Trojan Decl. ¶ 48, Ex. 151 (Mr. Klein Dep.) at 123:17-19), the court finds this statement not credible. The record indicates that Defendants issued multiple engineering judgments on or after the date of the injunction, explicitly demonstrating that FRG products can be used in head-of-wall applications. (*See* Trojan Decl. ¶ 43, Ex. 146 (Post PI Judgments) at 16, 25; *Id.* ¶ 15, Ex. 16 at 5; *see also* Mr. Klein Dep. at 141:16-142:24 (conceding that a March 28, 2025, engineering judgment referred to UL listings for FRG in head-of-wall conditions).)

Even if Defendants did not explicitly instruct customers to use FRG in infringing applications post-injunction, the record shows that customers used those products in

infringing implementations prior to the injunction. (*See* Trojan Decl. ¶ 47, Ex. 159 (Tullis Dep.) at 53:3-12 (confirming that customers using FRG in fire-rated conditions before the injunction purchased FRG post-injunction).) Given that approximately two-thirds of KPSI's customers did not receive timely notice of the injunction, those previously using FRG in infringing applications would have little reason to discontinue such use. (*See* Mot. at 9; Notice Emails; Customer List.) Defendants point out that each post-injunction purchase order for FRG included a disclaimer dictating that "FRG [is] not for use at head of wall without consulting [the Patents.]" (*See, e.g.*, Trojan Decl. ¶ 34, Ex. 100.) While true, Defendants issued these disclaimers only after the customers completed the purchase, (*see* Mr. Klein Dep. at 123:23-125:1), and the court agrees with CEMCO that a post-purchase disclaimer "is not a proper substitute for the court-ordered notification of the Injunction." (Reply at 6.)

Accordingly, the court finds by clear and convincing evidence that Defendants violated the injunction by selling FRG for use in infringing conditions post-injunction, regardless of whether their customers installed the FRG in such conditions.

3. <u>Defendants Sold SFG Products for Enjoined Purposes.</u>

CEMCO next argues that Defendants' SFG sales violate the injunction because SFG products are "not more than colorably different from FRG Products." (Mot. at 13-16; Reply at 6-8; Amended PI at 7); *see also TiVo*, 646 F.3d at 881-83. As detailed below, the court again agrees with CEMCO.

*a. SFG Is Not More Than Colorably Different from FRG*

As *TiVo* instructs, the court first examines the differences between SFG and FRG. *See* 646 F.3d at 882. The parties agree that SFG and FRG differ in two primary ways. First, SFG products have a "parchment paper interlayer" between the intumescent tape and the foam layer. (*See* Mot. at 14; Resp. at 9; *see also* Bageant Decl. (Dkt. # 271) ¶ 4, Ex. 3 (Gaw Statement) at 2.) Second, Defendants repositioned the protective polymeric layer ("poly layer") on SFG's intumescent material to the exterior face adjacent to the wallboard, whereas they placed it on the interior side of the intumescent material in FRG. (*See* Mot. at 14; Resp. at 9; *see also* Mr. Klein Dep. at 174:16-175:5.) The court finds that neither difference makes SFG more than colorably different from FRG.

i. Parchment Layer

CEMCO argues that the new parchment layer "makes no difference with respect to infringement of the Patents because it does not change how SFG is affixed to head-of-walls." (*See* Mot. at 14.) Defendants counter by asserting that "SFG's foam/parchment side creates a substantial dispute over whether the intumescent strip is 'on' the header track as claimed." (Resp. at 10 (quoting Compl., Ex. A ('365 Patent) at 6:57-62).) The court agrees with CEMCO.

This court has already determined as a matter of law that Safti-Strip—a predecessor to FRG and SFG—constitutes an "intumescent strip" within the meaning of the Patents, despite the inclusion of a foam "thermal barrier" between the intumescent material and the header. 8/14/19 Order at 19, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D. Wash. Aug. 14, 2019), Dkt. # 117. Specifically, the court

concluded that an "additional feature does not change Safti-Strip's fundamental character as a strip that comprises an intumescent composition[.]" *Id.*; *see also* 4/17/19 Order at 19, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D. Wash. Apr. 17, 2019), Dkt. # 98 (concluding that an "intumescent strip" is a "strip that comprises a substance that expands when exposed to heat"). This reasoning is instructive here. The additional parchment layer included in SFG does not change its fundamental character as an intumescent strip simply because material was added between the intumescent material and the header track. As CEMCO points out, "[t]he key advantage of applying an intumescent *strip* is that it allows a composite of different materials to be applied *in one step*, instead of layer by layer." (Mot. at 16 (citing '365 Patent at 4:51-53) (emphasis in original).) SFG operates in exactly this way, regardless of the parchment layer. Accordingly, the court determines that the parchment layer does not change SFG's character as an intumescent strip as defined by the Patents and thus fails to render SFG more than colorably different than the FRG.

ii. Protective Poly Layer

CEMCO also contends that the poly layer's updated position does not make SFG more than colorably different from FRG because it "is just another layer" of the intumescent strip. (Mot. at 15.) Defendants counter that the SFG design changes "what sits between the intumescent material and the gypsum board," which creates a "substantial dispute over whether . . . the wallboard contacts and bears against the outer strip surface of the intumescent strip." (Resp. at 9-10; *see also* '365 Patent at 7:5-13.)

CEMCO prevails here too. As Mr. Klein confirmed, the poly layer is not unique to SFG. (*See* Mr. Klein Dep. at 174:16-175:5.) FRG also has a poly layer, but it is located "internally" on the strip instead of the outside surface facing the wallboard. (*Id.*) Merely repositioning the poly layer adjacent to the wallboard, however, does not mean that the layer now sits between the wallboard and the intumescent material. As Kevin Gaw, one of Defendants' witnesses, shows in his expert report, the poly layer is a component of the intumescent material in an FRG implementation, and rearranging where it sits does not make it independent. (*See* Gaw Statement at 2 (showing no distinction between the intumescent material in FRG and SFG).) Defendants are correct that the poly layer contacts the wallboard in an SFG implementation. That does not mean, however, that the intumescent strip no longer bears against the wallboard, and the rearranged poly layer does not make SFG more than colorably different from FRG.

*b. Actual Infringement*

Under *TiVo*'s second step, the court must "evaluate the modified elements of the newly accused product against the asserted claim, on a limitation by limitation basis, to ensure that each limitation continues to be met" and "out of fairness, . . . is bound by any prior claim construction[.]" *TiVo*, 646 F.3d at 883 (citing *KSM Fastening Sys.*, 776 F.2d at 1528). According to Defendants, SFG's contacts with the header tracks and the wallboard are the two "claim-relevant interfaces." (Resp. at 12.)

CEMCO argues that "SFG is functionally the same as FRG in terms of how it is applied to headers" and how it contacts the wallboard. (*See* Mot. at 16; *see also* Walke Decl. (Dkt. # 291) ¶ 3, Ex. 1 (Walke Report) at 4.) Indeed, Defendants acknowledge that

they substitute SFG for FRG without the need for the customers to adjust their orders. (*See* Trojan Decl. ¶ 50, Ex. 153 (Kevin Dep.) at 45:4-46:5.) This direct substitution is possible because SFG is affixed on header tracks exactly as FRG is, and the outer surfaces of the two products both bear against the wallboard. (*See* Walke Report at 36-37 (discussing SFG UL listings as being like FRG listings); *id.* ¶ 21, Ex. 44 (UL listings depicting SFG implementation); Trojan Decl. ¶ 37, Ex. 109 (Defendants' November 2025 engineering judgment depicting SFG implementation).)

Defendants point out that their invoices and other SFG materials included disclaimers stating that "attached wallboard must not bear against SFG product installed at head of wall." (Resp. at 13 (citing Trojan Decl. ¶ 54, Ex. 157).) CEMCO issued those disclaimers, however, only after customers made purchases. (*See* Mr. Klein Dep. at 123:23-125:1.) Standing alone, these post-purchase disclaimers do not indicate that Defendants sell SFG solely for non-violative uses.

In sum, Defendants sell at least a portion of their SFG for fire-rated head-of-wall conditions. Accordingly, the court finds by clear and convincing evidence that Defendants' sales of SFG for such conditions violate the injunction.

4. <u>Defendants' Modified and new UL Certifications Violate the Injunction</u>

The injunction bars Defendants from modifying or creating any new UL listings that refer to using FRG or products no more than colorably different from FRG "for fire-rated head-of-wall constructions or assemblies as covered by the claims of the Patents." (Amended PI at 8.) CEMCO alleges that Defendants revised four listings (HW-D-0890, HW-D-0893, HW-D-0894, and HW-D-0900) and added two new listings

(HW-D-0984 and HW-D-0985) that violate these terms. (Mot. at 18.) To support its argument, CEMCO provided expert testimony indicating that the listings depict the same violative implementation, where "[t]he primary difference between . . . these systems is the change from [FRG] to [SFG]." (Walke Report at 4.)

Defendants provide no expert rebuttal; they rely instead on SFG being more than colorably different from FRG, arguing that the new and modified UL listings fall outside the injunction's reach. (Resp. at 13-14.) Defendants also assert that CEMCO must show "claim-covered use" to prove the UL listings violated the injunction. (Resp. at 14.) These arguments fail because the court has already determined that SFG is not more than colorably different from FRG. *See supra* Part III.A.3.a. The plain language of the injunction bars creating or modifying UL listings for such products in fire-rated head-of-wall conditions and does not require confirmed, claim-covered use. (*See* Amended PI at 8); *see also KSM Fastening Sys.*, 776 F.2d at 1528. Thus, the court finds by clear and convincing evidence that Defendants violated the injunction by creating and modifying UL listings that refer to SFG in fire-rated head-of-wall conditions.

5. <u>Individual Civil Contempt</u>

CEMCO asserts that each Defendant and Mr. Tullis should be held in civil contempt for their roles in the alleged violations of the injunction. (Mot. at 2.) To succeed, CEMCO must prove by clear and convincing evidence that each Defendant violated the injunction through their individual conduct. *See Affordable Media*, 179 F.3d at 1239; *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The court addresses the contempt liability of each defendant and Mr. Tullis below.

*a. Mr. Klein*

CEMCO asserts that Mr. Klein was personally involved in the notice failure, the continued FRG sales, and the development and sales of SFG. (Mot. at 5-7.) Mr. Klein acknowledges he has a "central role in product design, customer communications, [and] engineering judgments" within KPSI but argues that contempt is only appropriate if CEMCO can "tie Mr. Klein to a particular sale, instruction, UL submission, engineering judgment, or notice decision that violated the injunction as written." (Resp. at 19.)

According to the record, Mr. Klein generated the original list of customers to be notified of the injunction, which included less than one-third of those on the list Defendants used at trial. (Trojan Decl. ¶ 30, Ex. 93; *id.* ¶ 13, Ex. 12.) On March 6, 2025, Mr. Klein told Mr. Tullis that he would personally notify one customer, Valley Interior, but failed to send them a copy of the injunction by the March 7, 2025, deadline. (Trojan Decl. ¶ 30, Ex. 93; Mr. Klein Dep. at 119:5-22.) Even if the underinclusive list was generated in good faith, Mr. Klein's handling of the notice to Valley Interior shows his personal, willful violation of the injunction. (*See* Amended PI at 7.)

Moreover, Mr. Klein issued engineering judgments to customers directing fire-rated head-of-wall use beyond the date of the injunction to accompany certain FRG sales. (*See, e.g.*, Post PI Judgments at 16, 25; Trojan Decl. ¶ 15, Ex. 16 at 5.) Mr. Klein's "central role in product design" also indicates his substantial involvement in creating SFG, which the court determines is not more than colorably different from the infringing FRG. (Resp. at 19.) The court concludes that this evidence, taken together, is

clear and convincing proof that Mr. Klein personally violated the injunction on multiple grounds and is therefore subject to civil contempt.

*b. Ms. Klein*

Although Ms. Klein appears to be less involved than her husband in customer communications, product design, and third-party certification, she acknowledges that she is the owner and president of KPSI. (Resp. at 20.) Her status within KPSI alone indicates that she played a substantial role in effectuating the violative FRG and SFG sales discussed above. *See United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988) ("De facto as well as de jure officers are responsible for enabling a corporation to comply with orders directed to it.")

Moreover, CEMCO points to specific conduct by Ms. Klein that violated the injunction. For example, Ms. Klein instructed Mr. Tullis to send the injunction to customers of record. (2d Bageant Decl. (Dkt. # 296) ¶ 2, Ex. A at 5.) Ms. Klein testified, however, that after issuing those initial instructions to Mr. Tullis, she did "nothing" to ensure each customer had received proper notice. (Ms. Klein Dep. at 49:11-50:7.) She maintained her inaction despite CEMCO's repeated requests for confirmation of injunction compliance in March 2025. (*See* Trojan Decl. ¶ 3, Ex. 1; *id.* ¶ 4, Ex. 2). Even after CEMCO alleged notice deficiencies in its August 2025 motion to initiate contempt proceedings, KPSI personnel—including Ms. Klein—waited until March 2026 to send notices to an additional 43 customers in an attempt to bring Defendants into compliance with the injunction's notice requirements. (*See* Mot. to Reopen at 16; KPSI Rog Responses at 5-7.) As a party to the injunction and KPSI's president, Ms. Klein had an

obligation to ensure the notice requirements were met. *See* Fed. R. Civ. P. 65(d)(2); *Laurins*, 857 F.2d at 535. By failing to confirm initial notice compliance and failing to investigate potential deficiencies when CEMCO surfaced them, the court determines that Ms. Klein did not take all reasonable steps to comply with the injunction. Thus, the court finds by clear and convincing evidence that Ms. Klein is in civil contempt.

*c. Kevin Klein*

CEMCO argues that Kevin should be held in civil contempt because he "helped to develop SFG and he automatically substituted SFG when customers ordered FRG." (Reply at 10). As a party to the injunction, Kevin is bound by its terms. Fed. R. Civ. P. 65(d)(2)(A). Kevin does not dispute that he helped create SFG and substituted SFG for FRG in customers' orders. (Resp. at 20-21.) Rather, he argues he should not be in contempt because CEMCO failed to identify conduct that led to a specific violation. (*Id.*)

Kevin's role in making FRG and SFG post-injunction violated the injunction. *See* (Amended PI at 7 (enjoining Defendants from "[m]aking . . . any product that is not more than colorably different from FRG[.]"); Part III.A.3.a (finding SFG is not more than colorably different from FRG).) But "technical violations" need not result in contempt when the party takes all reasonable steps to comply, which the court finds Kevin did. *Gen. Signal Corp.*, 787 F.2d at 1379. Unlike his parents and Mr. Tullis, Kevin is not responsible for direct communication with KPSI's customers, third-party certifications, or making leadership decisions for the business. (*See* Kevin Dep. at 6:8-7:6.) He primarily receives orders, ships orders, makes the products, and manages one employee that also makes the products. (*Id.*) Additionally, Kevin's testimony indicates he had a

minor role in creating SFG, as he only made initial samples and conducted basic tests with his father without the involvement of third-party certifiers. (Kevin Dep. at 20:9-21:4.) He also stated that he substituted SFG for FRG at the direction of his father. (*Id.* at 43:14-45:11.)

Mr. Klein, by contrast, was the driving force behind continuing to sell FRG in infringing ways, the creation of SFG, and using SFG in place of FRG. Although Kevin did not notify customers about the injunction prior to sales, he was not tasked with that job, and he included disclaimers on materials he controlled—boxes, sales orders, and invoices. (*See id.* at 11:1-18.) Despite Kevin's technical violation, the court finds that he took all reasonable steps in his power to comply and does not hold him in contempt.

*d. Mike Tullis*

CEMCO urges the court to hold Mr. Tullis in contempt because he played "an active role in helping Defendants violate the injunction." (Mot. at 20.) Under Federal Rule of Civil Procedure 65, an injunction is binding on "officers, agents, servants, employees, and attorneys" of the enjoined parties when they "receive actual notice of it by personal service or otherwise[.]" Fed. R. Civ. P. 65(d)(2)(B); *see also Troupe v. Loomis*, 15-5033BHS, 2015 WL 4523524, at *3 (W.D. Wash. July 27, 2015) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir.1998)). If properly notified, non-parties may be found in contempt if they "aid or abet the defendant in violating the court's order[.]" *Id.*; *see also Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949-50 (9th Cir. 2014) (holding that a party "need not affirmatively desire to cause a violation of the injunction" to be held in contempt).

The parties do not dispute that Mr. Tullis is a key employee of KPSI, or that he had proper notice of the injunction's requirements. (*See* Mot. at 20-21; Resp. at 21; Reply at 10; *see also* Tullis Dep. at 19:2-5.) The parties also agree that Mr. Tullis had a direct role in complying with the injunction because he was charged with notifying customers. (Mot. at 21; Resp. at 21; *see also* Tullis Dep. at 19:6-16.) In fact, Mr. Tullis represents to the court that he "sent a copy of the court's order to every customer that had previously purchased the FRG gasket from KPSI." (Tullis Decl. ¶ 2.) Defendants argue, however, that Mr. Tullis did not "knowingly cause[] a notice violation" because he did not create the customer list or know it was incomplete. (Resp. at 21.)

The court disagrees with Defendants. Although Mr. Tullis may not have generated the list, the court finds it implausible that he did not know that a list containing less than one-third of KPSI's total customers was incomplete. (Mot. at 9; Customer List; Notice Emails; Tullis Dep. at 14:7-23 (indicating Mr. Tullis has been involved in every sale KPSI has ever made)); *see also Cetacean*, 774 F.3d at 950 (holding that contempt is appropriate when "the party know[s] a violation is highly likely to occur"). Furthermore, Mr. Tullis violated the injunction by selling SFG. Mr. Tullis sold SFG as a new and improved product customers could use in head-of-wall conditions in place of FRG. (*See* Trojan Decl. ¶ 18, Ex. 33; *id.* ¶ 19, Ex. 39.) Ultimately, because (1) Mr. Tullis knew he was obligated to notify all KPSI customers of the injunction and worked with the Kleins to bring about the enjoined result and (2) because his sales activity violated the injunction, *see supra* Part III.A.3, the court finds by clear and convincing evidence that Mr. Tullis violated the injunction through his individual conduct.

*e. KPSI*

Finally, CEMCO requests the court to hold KPSI in civil contempt for failure to provide notice to its customers, for selling FRG and SFG for violative purposes, and for modifying and procuring new UL listing that induce infringement. (Mot. at 2.) Defendants agree that "KPSI sold gasket products, maintained or revised UL materials, communicated with customers, and remained in the firestopping market." (Reply at 1.) They do not otherwise address contempt as applied to KPSI. (*Id.*) As detailed above, the court finds this conduct violated the injunction. *See supra* Part.III.A.1-4. The court finds, therefore, by clear and convincing evidence, that KPSI should be in civil contempt.

**B. Criminal Contempt**

CEMCO asks the court to initiate criminal contempt proceedings against Mr. and Ms. Klein by referring this case to the United States Attorney to "preserve respect for the judicial system itself." (Mot. at 24 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800 (1987)).) Criminal contempt proceedings can be appropriate when civil contempt sanctions have proven to be ineffective. *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir. 1994). Criminal contempt is a "crime in the ordinary sense," which can carry severe penalties, including imprisonment. *See Bloom v. State of Ill.*, 391 U.S. 194, 199-201 (1968).

Mr. and Ms. Kleins' course of conduct before this court indicates that civil sanctions may be ineffective in coercing them into complying with court orders. (*See* 8/13/24 Order (finding Defendants had engaged in discovery misconduct and ordering sanctions); *supra* Part III.A.5.a-b (finding willful violations of the Amended PI)); *see*

*also* 2/16/22 Order, *Cal. Expanded Metal Prods. Co. v. Klein*, No. C18-0659JLR (W.D. Wash. Feb. 16, 2022), Dkt. # 301 (finding Mr. Klein personally violated a court order and holding him in civil contempt). Still, given the serious implications of CEMCO's request, the court is not prepared to initiate criminal proceedings at this time and therefore directs the parties to present additional information on the matter before it makes a final decision.

## IV. CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

(1) The court GRANTS in part and DENIES in part CEMCO's motion for contempt (Dkt. # 289). The court GRANTS CEMCO's request for a finding of civil contempt against KPSI, Mr. Klein, Ms. Klein, and Mr. Tullis based on violations of the permanent injunction (Dkt. # 247). The court DENIES CEMCO's request for a finding of contempt against Kevin Klein;

(2) The court ORDERS the parties to meet and confer by **October 20, 2026**, regarding how to proceed with the damages phase of these contempt proceedings and to submit, by **November 3, 2026**, a joint status report setting forth a proposed schedule for those proceedings; and

(3) The court ORDERS the parties to submit additional briefing on whether the court should initiate criminal contempt proceedings by **November 3, 2026**.

Dated this 6th day of October, 2026.

# #

JAMES L. ROBART
United States District Judge